STATE OF MISSOURI, at the relation of BIRDIE TAUBMAN, Relatrix, v. SAMUEL DAVIS et al., Respondents.

Kansas City Court of Appeals, April 29, 1918.

1. **DIVORCE: Domicile: Husband and Wife.** During the period of cohabitation between the husband and wife, the domicile of the husband is regarded as the domicile of the wife, for the purpose of establishing their identity as husband and wife. But the wife may, for the purpose of establishing venue to bring an action for divorce make herself a residence or domicile separate and distinct from that of her husband.

2. ———: ———: ———. To create a domicile or residence for the purpose of bringing an action for divorce two elements are fundamentally and absolutely necessary. These are actual bodily presence in the county or place combined with freely exercised intention of remaining there permanently, or for an indefinite time at least. The term residence means the actual bodily presence of the party, if that presence is coupled with the intention to remain permanently, or for an indefinite time.

3. ———: Notary Public: Jurisdiction. A court does not lose its jurisdiction of a petition for divorce by reason of the act of the law partner of plaintiff's attorney in swearing the plaintiff to the petition, in his capacity as a notary public, because there is nothing either in common law or under the statute forbidding such an act to be performed by an attorney of record and hence such an affidavit is not a nullity.

ORIGINAL PROCEEDING IN PROHIBITION.

WRIT MADE PERMANENT.

*Aull & Aull* and *Campbell & Ellison* for relatrix.

*W. H. Chiles, Lyons & Ristine* and *John M. Cleary* for respondents.

TRIMBLE, J.—This is an original proceeding in prohibition brought by relatrix against her husband, Edwin M. Taubman, and Hon. Samuel Davis, as Judge of the circuit court of Lafayette county, to prevent further action in a suit for divorce filed by said Taubman in said Lafayette court, the ground of relatrix' petition being that said Lafayette court is without jurisdiction to try the husband's divorce suit for the reason that at the time the same was filed relatrix had already brought suit for divorce in the circuit court of Adair county and the same was, and is now, therein pending and undisposed of.

After the provisional writ was issued and the respondents had made return and relatrix had filed a reply thereto, the respondents filed a motion for judgment on the pleadings quashing the preliminary writ and dismissing the petition. This motion was heard and disposed of by the court in an opinion by JOHNSON, J., November 27, 1916, wherein the motion was overruled. [See, State ex rel. Taubman v. Davis, 190 S. W. 964.] No order making the provisional writ permanent was entered, however, and thereafter, upon respondents' application for the appointment of a commission to take testimony, Hon. Nathaniel M. Shelton was appointed with directions to take testimony and report. This has been done and the case has again been argued and submitted upon the question of whether relatrix is entitled to have the provisional writ made permanent. There may be some question whether the presentation of the aforesaid motion for judgment on the pleadings did not operate as a withdrawal of the return, a confession of the facts stated in relatrix' petition, and a supersession of the application for the appointment of a commissioner, so as to make the award of the

permanent writ a necessary incident to the judgment overruling the motion. [State ex rel. v. Barnett, 245 Mo. 99, 114; State ex inf. v. Vallins, 140 Mo. 524.] It would seem from the authorities just cited that, had the motion been a demurrer, such would certainly have been the proper course. But a motion for judgment on the pleadings is not a demurrer although partaking of some of its qualities. [Hodson v. McArnerney, 192 S. W. 423.] And as respondents were allowed to file their motion and have it considered and disposed of without any intimation that a disposal of same would result in the final disposition of the case, and since relatrix already had a motion for the appointment of a commissioner, this court, having overruled said motion for judgment on the pleadings, thereafter, upon respondents' application, appointed a commissioner and allowed the case to proceed to a hearing on the merits. And since all parties seem to have sought for, appeared and participated in said hearing, and as we are able, after conceding to respondents a hearing on the merits, to reach a conclusion which, in result, is the same as if the provisional writ had been made permanent following the overruling of the motion for judgment on the pleadings, we need not now decide whether or not a judgment awarding the permanent writ should have followed the overruling of said motion, and, therefore, pass that question.

With one exception, possibly two, the facts involved in this litigation are undisputed and are set forth in Judge JOHNSON's opinion herein above cited. It is, therefore, unnecessary to repeat them here. And at this point it may be well to say that many of the contentions now urged by respondents were considered at that hearing and determined in that opinion, and, consequently we will not enter into a consideration of them again.

The one question of fact (or possibly two), now in dispute between the parties, and to settle which a commissioner was desired to take testimony, has reference to the residence of relatrix at the time she brought

her suit in Adair county. Had she obtained a residence there, within the meaning of section 2371, Revised Statutes 1909, at the time she brought her suit, or did her residence, fixed by that of her husband, remain in Lafayette county? Did she have cause for separation from her husband so as to entitle her to create for herself a residence separate from his? This last question, it would seem, is, if anything, but a subdivision or branch of the other question.

As barring upon the question of relatrix' residence at the time she brought her suit, the evidence taken before the commissioner shows:

That prior to her marriage, relatrix had for thirty-one years resided with her parents at Kirksville in Adair county, but for awhile just before her marriage she had been employed in Fulton, Missouri, as Matron of the State School for the Deaf. During this time, however, she, at all times and up to her marriage with Mr. Taubman, regarded Kirksville as her home and place of residence. That upon her marriage to Mr. Taubman she went with him to Lexington, Layfayette county, Missouri, and resided there until December 17, 1915, a little over three years. That she left Mr. Taubman's house between nine and ten o'clock at night December 15, 1915, and went to the home of a neighbor lady and staid there till the morning of December 17, 1915, when she left Lafayette county and returned to Kirksville in Adair county. That on the occasion of her leaving her husband's house at the above-named hour of night she was in her room with the door locked and her husband was over the transom endeavoring to get in. That about two weeks before she left Mr. Taubman's house she had made up her mind to go to and make Kirksville her home and residence, and during this two weeks, although under the same roof with Mr. Taubman, they were not living together as man and wife; That when she left Lexington she did so with the fixed intention never to return but to make Kirksville her home and her place of residence; that ever since her return to Kirksville she has continued

to reside there and make it her home, having sought and obtained employment there as Deputy Recorder of Deeds. That when she left Lexington for Kirksville she took none of her personal effects except the clothes she had on and a small hand bag; that she took no other articles because she was afraid to return to her husband's house for them, but that, through her attorneys, she later succeeded in having her clothing sent to her at Kirksville. That after reaching Kirksville with the intention of remaining there permanently and making it her home, she consulted her attorneys and brought her suit for divorce.

It is true that, flowing from the legal theory of an identity of person in husband and wife, the law regards the domicile of the husband as the domicile of the wife during the period of cohabitation. But under the later and more liberal view, a wife may, for the purpose of establishing venue wherein to bring an action for divorce, make for herself a residence or domicile separate and distinct from that of her husband. [14 Cyc. 847; Wyrick v. Wyrick, 162 Mo. App. 723,735] And in those cases where the *express object of the proceedings* is to establish the fact that the *marital relation ought to be dissolved*, the law recognizes the wife as having a separate existence, separate interests and separate rights. [2 Bishop on Marriage, Divorce and Separation, section 120.] And, therefore, the maxim, that the domicile of the wife follows that of the husband, will not be applied so as to prevent a wife obtaining a domicile elsewhere for the purpose of bringing a divorce action, or to oust the court of jurisdiction when she has done so. [Harteau v. Harteau, 14 Pick (Mass.), 181.] For the purposes of divorce actions, the law permits separate domiciles and the maxim has no force and cannot prevail in a divorce case. [2 Bishop, sec. 112.] By necessary interpretation the statute, giving the wife right to sue for divorce, includes all needful collateral rights among which is the right to have a separate domicile. [2 Bishop, sec. 116.] In proceedings which from their very nature makes a husband and

wife opposite parties, the legal fiction of the unity of person created by the marriage will not be followed to destroy the rights of either contrary to the principles of natural justice. [Colvin v. Reed, 55 Pa. St. 375.] Nor is it necessary, in order to confer jurisdiction on the court in which the wife's suit is brought, that her right to a divorce must be established *beforehand*. The purpose of the divorce suit is to establish that, and to require her to establish the fact that she is in the right before she can bring her suit or, which is the same thing, before she can create a domicile and secure a venue in which to bring it, is to demand that she shall establish the justice of her case before she will be allowed to sue for that purpose. Hence, in deciding the proceeding now before us, we do not have to prejudge or decide the divorce case and *finally* determine that relatrix was justified in leaving her husband and instituting suit for divorce in order to settle the question whether she could acquire a separate domicile in Adair county so as to confer jurisdiction upon the circuit court there to hear and determine her suit. The cause of action for divorce is founded upon the "*allegation* of a *delictum* which legally justified a living apart, and took away the husband's right to fix the domicile of the wife." [2 Bishop, sec. 112.]    But if it be necessary that at least *some showing* be made herein, we may observe that the petition, verified by the affidavit of the plaintiff (relatrix here), setting out the causes and grounds for divorce and the residence of plaintiff, was introduced without objection before the commisioner, and contains all the *allegations* necessary to confer jurisdiction.    In addition to this, she may be granted the benefit of whatever prima-facie showing may arise by way of inference from the facts, shown before the commissioner, that she left her husband's home *in the nighttime* without securing her clothing, and was *afraid* to go back after it.    A further showing of the circumstances under which she left was prevented by an objection on the part of the husband that this was going into the merits of the case.    We are, therefore, of the

opinion that nothing has been made to appear herein which, in law, forbade or prevented Mrs. Taubman from creating a separate domicile in Adair county which would confer upon the circuit court of that county the jurisdiction or power to entertain and hear her petition for divorce. The only question remaining is had she, at the time her divorce suit was filed, acquired a residence in that county within the meaning of section 2371?

In determining whether a person has created a domicile or "residence" in a place, we are apt to confuse the fact itself with the things that are usually considered as *evidences* of the fact in question. For instance, when we say a person has his "residence" in the county, the word connotes many things in ordinary meaning—a house, an accustomed place to stay, a business, etc. But "residence" in the legal meaning, and as here used, does not necessarily require these things though very frequently they are looked at to determine the ultimate fact to be proved. To create a "domicile" or "residence" as here used, only two elements are fundamentally and absolutely necessary or essential. These are *actual bodily presence* in the county or place combined with the freely exercised *intention of remaining there* permanently, or for an indefinite time at least. Whenever these two elements combine, a domicile of choice is created and all former domiciles are *ipso facto* abandoned. [Minor on Conflict of Laws, 114; Dicey on Conflict of Laws, 104.] "Every person of full age having a right to change his domicile . . . if he removes to another place with an intention to make it his permanent residence (*animo manendi*), it becomes instantaneously his place of domicile." [Story on Conflict of Laws, 50.] "Neither presence alone nor intention alone will suffice to create a domicile of choice. Both must concur and at the very moment they do concur, the domicile is created." "The term 'residence' as here used means simply the actual *bodily presence* of the party, if that presence is coupled with the intention to remain permanently." [Minor on Conflict of Laws, 115.] It is not necessary that the intention should be to remain

one's whole life; what is meant by "permanently" here is that there must be a fixed and definite purpose to remain "for an unlimited or indefinite time, without any definite intention of ultimate removal." [Minor, p. 117.] The same author at page 116 says: "Since physical presence (coupled with the *animus manendi*) is all that is required, it is immaterial to inquire whether the party is living in a house of his own, in a rented house, in a hotel, in lodgings, or has no place to lay his head. These may be, and often are, of the greatest importance as evidence whereby to determine whether he has the proper *animus;* but if that is established otherwise they become unimportant." . . . "At the moment when a party, being present in a place, forms the definite intention to remain there permanently, from that moment a domicile of choice is created, which will in general continue until a new domicile is acquired." That the above and foregoing principles, stated by the text books cited, are abuntantly sustained by the decisions, is shown by an examination of the following authorities: Ringgold v. Barley, 5 Md. 186; Mitchell v. United States, 21 Wall 350; Allgood v. Williams, 92 Ala. 551; Price v. Price, 156 Pa. St. 617; White v. Tenant, 31 W. Va. 790; Lowrey v. Bradley, 1 Spier's Eq. (S. C.) 1, 39 Am. Dec. 142 Dupuy v. Wurtz, 53 N. Y. 556; City of Hartford v. Champion, 58 Conn. 268; Guier v. O'Daniel, 1 Binn (Tenn) 349, note; Sumrall's Committee v. Commonwealth, 172 S. W. (Ky.) 1057; Hart v. Lindsay, 17 N. H. 236.] In Hill, v. Hill, 166 Ill. 54, it was held that where a wife had resided in the State for the required length of time, but moved to another county just prior to bringing suit, her legal residence there for jurisdictional purposes depended upon her good faith in going and her intention to reside there permanently and not upon the length of time she has resided in her new home.

It is manifest from the above authorities and from a consideration of all the evidence taken before the commissioner (so earnestly asked for by respondent Taubman upon the announcement of the former opinion), that not only does it appear that relatrix created a domicile

of choice in Adair county so as to confer jurisdiction on the circuit court of that county to hear and determine her cause of action for divorce, but also that no cloud has been cast upon her motives in so doing. The hearing before the commissioner, therefore (even though the appointment of one may not have been according to the usual procedure in this class of cases, but was made because both sides seemed to desire it), has not developed anything beyond what was considered in the former opinion to prevent the provisional writ being made permanent.

Point is now made that the Adair court acquired no jurisdiction because the notary public before whom relatrix swore to her petition for divorce was the law partner of the attorney who prepared it for her. There is nothing either in the common law or in the statute forbidding such an act to be performed by an attorney of record, and hence the affidavit is not a nullity. [Smith v. Ponath, 17 Mo. App. 262; State v. Noland, 111 Mo. 473, 505.] In Kuhland v. Sedgwick, 17 Cal. 123, it was held that plaintiff's attorney, being a notary public, could take plaintiff's affidavit verifying the complaint. [See, also, Reaves v. Cowell, 56 Cal. 588, 591; Young v. Young, 18 Minn. 90; 1 R. C. L. 763-4.] There being nothing in the common law forbidding this, it is, therefore, "generally held that, in the absence of any statute or rule of court to the contrary, an affidavit is not defective because taken by an attorney in the cause." [2 Cyc. 12.] [See, also, Hueston v. Preferred Accident Ins. Co., 143 N. W. 566; Hankins v. Helms, 12 Arizona, 178; McDonald v. Willis, 143 Mass. 452; Swearingen v. Howser, 37 Kans. 126; Horkey v. Kendall, 53 Neb. 522.]

This disposes of all questions raised which were not decided by the former opinion. It follows, therefore, that, if said opinion is to stand, the provisional writ should be made permanent, and it is so ordered. The other judges concur.