G. W. LEWIS, RESPONDENT, v. EMMA LEWIS, APPELLANT.—176 S. W.
(2d) 556.

Kansas City Court of Appeals. December 6, 1943.

174

*C. C. Ross* and *Charles J. Engel* for appellant.

*R. E. Moulthrop* for respondent.

176

SPERRY, C.—This is a suit in equity, filed in the October Term, 1942, to set aside a divorce decree granted to C. W. Lewis, in the October Term, 1931. In the divorce suit C. W. Lewis was plaintiff and Emma Lewis was defendant. In the instant case Emma Lewis is plaintiff and C. W. Lewis is defendant. They will be so referred to herein. Judgment was for defendant and plaintiff appeals.

The grounds upon which relief is sought by plaintiff are lack of jurisdiction and fraud. All of the evidence of record was offered by plaintiff, defendant having defaulted.

Plaintiff testified that she was "impressed" that defendant was born in New Mexico; that she met him at Dayton, Ohio, in April, 1919, where he was a member of the United States Air Service at Wright Field; that shortly thereafter defendant was discharged and, in the autumn of 1919, entered Michigan University, at Ann Arbor; and that they were married in July, 1920. She identified a marriage certificate which was received in evidence and which recites the following:

"THIS CERTIFIES That Charles W. Lewis of Los Angeles, Cal., and Emma J. Rennison, of Louisville, Ky., were by me united in the bonds of MARRIAGE at Utica, N. Y., on the first day of July, in the year of our Lord Nineteen Hundred and twenty conformably to the ordinance of God and the Laws of the State."

She testified that, after their marriage, they lived at Ann Arbor, Michigan, where she worked and where defendant attended the university, from which he graduated in 1922; that after his graduation, they continued living at Ann Arbor, while defendant worked for his master's degree, until he suffered a physical breakdown caused by tuberculosis; that they went to California where they lived in the

desert for a few weeks until defendant recovered his health and accepted a position in the diplomatic service of the United States; and that they left for England in May, 1923, to begin defendant's diplomatic duties.

She further testified to the effect that defendant had never been in Missouri from the time she met him until they sailed for England, and that he had continued in the diplomatic service of the government from that time until the date of the trial in the instant case, at which time he was stationed at Washington, D. C. She stated that they lived continuously in England, after leaving California, until March, 1926, when she returned to this country and visited defendant's aunts, who lived at Bethany. Plaintiff remained in Bethany for about three months, at the end of which time defendant returned to Washington and, after five days there, they both left for Mexico. From Mexico defendant was transferred to Nova Scotia, plaintiff accompanying him, where they remained until about October 1, 1931, when he took a leave of absence and they drove to Washington, and from thence to Springfield, Missouri. During all of this time, she testified, defendant was not in Missouri.

She stated that while they were in Springfield, *she* suggested that they visit his aunts at Bethany; that nothing had been or was said about a divorce; that they arrived in Bethany on Saturday, October 11, 1931, at 12:00 noon, and stayed at a hotel, occupying the same room; that defendant played golf Sunday with some former high school classmates, and that they were entertained at dinner that evening by another of his former schoolmates; that nothing was said about a divorce; and that Monday they visited the cemetery in the morning and attended a dinner party that evening. She testified that defendant told her, sometime during their stay at Bethany, that she was ill and needed a rest and that he was going to leave her in California and go to his post in Nova Scotia alone; that she asked if this was a ''declaration of independence'' and ''he said no, I think it would be a good thing to go on my own awhile and you could go on your own;'' that he presented her with a paper which she signed but which she did not read, and which, he told her, was a provision for her separate support; that he told her he had an appointment with some friends Monday evening and that she made an excuse so that he could leave the dinner party and fulfill it; that he was gone about fifteen minutes and returned; that they left for California the next day; that they lived together as husband and wife in California for a month and then he left for Nova Scotia; that they wrote each other regularly while he was in Nova Scotia at that time; that he lived with her for five days at the home of her sister in Syracuse, New York, in December, 1932, and went from there to India, in his work; that he told her before he left for India that they were merely living apart and that she did not know, until shortly after he left,

that a divorce had been granted in October, 1931, and that defendant had remarried November 11, 1931. Defendant sent her $150 per month from 1931, until sometime in 1940, when he reduced it to $50, and later discontinued remittances entirely.

Plaintiff offered the testimony of a reputable attorney of Bethany who testified that defendant wrote him sometime prior to October, 1931, about getting a divorce in Bethany; that on Monday, the date the divorce was granted, defendant consulted him in his office and that he prepared a divorce petition for defendant, as plaintiff therein, as against plaintiff in this case, and a written entry of appearance; that about 4:30 P. M., on the same day, plaintiff and defendant, together, came to his office and that defendant in that suit (plaintiff in this case) signed the entry of appearance; that he, the attorney, filed the papers at about 5:00 P. M., and requested the court to come back after dinner and hear the case, which was done; that Mr. Lewis and two witnesses, whose names he gave, appeared before the court about 8:00 P. M., and gave evidence in the case and the divorce was granted; that the grounds for divorce as stated in the petition was impotency; that the next day the attorney removed the papers from the court files and, later, destroyed them; that he did this in order to prevent any publicity that might be harmful to defendant in his diplomatic career.

Plaintiff denied, from the witness stand, ever having been in the attorney's office, or ever having seen him prior to his appearance as a witness in this case.

When this case was tried there were no papers in the court files and the only docket entry was one showing filing of petition and entry of appearance, and the granting of a divorce.

Plaintiff contends that the court erred in not setting the divorce decree aside, and for reason urges that the court had no jurisdiction to grant the divorce upon petition of defendant who was not a resident of Missouri for more than one whole year next before the filing of the petition. She relies on Section 1517, Revised Statutes Missouri 1939. It is the law that before one is entitled to have a decree of divorce there must be strict compliance with the terms of the statute, *supra.* Plaintiff must allege and prove that he is and has been for more than one whole year next before the filing of the petition a resident of this State unless the offense complained of was committed in this State. [Coulter v. Coulter, 124 Mo. App. 149, 100 S. W. 1134; Garver v. Garver, 130 S. W. 369; Stansbury v. Stansbury, 118 Mo. App. 427, l. c. 432; Amerland v. Amerland, 173 S. W. 104, l. c. 106.] The Supreme Court has declared it to be the universal rule that a State cannot exercise, through its courts, jurisdiction to dissolve a marriage when neither spouse is domiciled within the State. [Wright v. Wright, 165 S. W. (2d) 870, l. c. 875.] The same court, in that decision, also declared the law to be that a divorce decree, obtained

under such circumstances, could be set aside for fraud in a direct action such as this; but it held that, in order to vitiate such a judgment on the grounds of fraud "the same must be shown by clear, cogent and convincing evidence."

Without deciding the question of whether or not impotency, the ground relied on for divorce in this case, was an offense committed within this State, within the meaning of the statute and within the evidence here shown, let us proceed to determine the question of residence, which is the disputed ground upon which both parties have chosen to pitch their battle.

Plaintiff testified that she was "impressed" that defendant was born in New Mexico; but her testimony establishes by inference that defendant had lived at Bethany, in Harrison County, Missouri, and had gone to school with a number of friends with whom he there visited in October, 1931. The evidence tending to prove New Mexico as his birth place is no more convincing than that which tends to prove a later residence in Bethany. The evidence is no more than a scintilla on the entire subject. When plaintiff met defendant in 1919 he was a member of the United States Air Force, at Wright Field, Ohio. This court held, State ex rel. v. Davis, 199 Mo. App. 439, 203 S. W. 654, l. c. 656, that "To create a 'domicile' or 'residence', . . . , only two elements are . . . necessary . . . These are actual bodily presence in the county or place combined with the freely exercised intention of remaining there permanently, or for an indefinite time, at least." We have also held that, once a residence has been established in this State, such residence may be thereafter *maintained* without the continued physical presence of the party within the State. [Trigg v. Trigg, 41 S. W. (2d) 583, l. c. 588, 589.] This is especially true in the case of men and women who are members of the armed forces of their country, or in the diplomatic service; and it is also true of students. However, any such person may, if he so wishes, change his residence to another State or country if he removes thereto with an intention of there remaining for an indefinite time, and if he intends the new location to be his domicile. [19 C. J. 418; State ex rel. v. Davis, *supra*; Trigg v. Trigg, *supra*.] In the Trigg case we said: "Residence involves a question of fact controlled mainly by intention." Such a declaration of law is peculiarly applicable in disposing of the question of *maintenance* of residence.

The evidence in this case discloses that, probably, defendant was born in New Mexico and later lived in Harrison County, Missouri; that he was successively thereafter in the armed forces of the United States, a student attending college in Michigan, a patient recovering from tuberculosis in the desert of California for a period of three weeks, and employed in the diplomatic service of the United States. Thus he spent his life, from 1919 until the date of this trial, October, 1942. If he was ever domiciled in Missouri, then there is no evidence

which tends to prove that he thereafter established a domicile elsewhere, unless it be the declaration contained in the marriage license. That declaration, alone, unaccompanied by defendant's physical presence in California together with some evidence of an intent to remain there for an indefinite period of time and to adopt that as his domicile, is insufficient evidence upon which to base a finding that his domicile was in California at the time when the license was issued by some unknown party who inserted therein a declaration of residence to that effect. There is no evidence tending to prove that defendant had ever been in California, prior to the date of the issuance of the license. It will be remembered that when he did go to, that State, some two years later, it was only because of his health, and that he remained but three weeks and spent the entire time in the desert, recuperating his health.

If his domicile, prior to issuance of the marriage license, was actually in Missouri, then a declaration by defendant to the effect that his residence was then in California, would not be sufficient to make or establish California as his domicile. To establish a domicile in any state defendant must have actually been in that State with an intent to reside there. [State ex rel. v. Davis, *supra*; Trigg v. Trigg, *supra*; 19 C. J. 418.] Furthermore, we have no way of knowing who inserted this declaration of residence in the certificate; nor do we know at whose instance it was inserted, whether at the instance of plaintiff, or defendant, or a third party. Therefore, the marriage certificate is not sufficient, of itself, to disprove a Missouri residence. Physical absence from this State for a period of more than twenty years, under circumstances here shown, is not, alone, sufficient to deprive one of a residence once established. The divorce petition itself has been destroyed and the facts alleged therein are not known. There is no record of the testimony taken in the divorce case. The court records, however, show the filing of a petition and entry of appearance, and the granting of a decree of divorce. The lawyer who represented defendant in the divorce proceeding testified to the effect that a petition for divorce was executed and filed by Lewis; that Mrs. Lewis executed a written entry of appearance which was filed; and that the court heard the testimony of Lewis and two other witnesses before entering a decree of divorce.

The circuit court record, therefore, establishes it as a fact that a court of general jurisdiction rendered a decree of divorce in favor of Charles W. Lewis, plaintiff, as against Emma Lewis, defendant. That record also discloses that a petition was filed by plaintiff and that defendant entered her appearance to the action. Oral testimony did not contradict the record but tended to corroborate it. A judgment is presumed to be valid, until vacated by proper proceedings instituted for that purpose, where the judgment is one within the jurisdiction of the court rendering same. Jurisdiction will be presumed in such

cases, where the record is silent on the question. [Kennedy v. Kennedy, 23 S. W. (2d) 1089, l. c. 1040.] In such cases it is presumed that the proceedings were regular, and that every requisite and every fact necessary to sustain the judgment was present. [31 Am. Jur. 76.] It is presumed that the court acquired jurisdiction of the persons of the parties to the proceedings. [31 Am. Jur. 79.] The same presumption in favor of the jurisdiction of a court of general jurisdiction rendering a decree of divorce applies as in other cases. [17 Am. Jur. 392.]

The presumption of validity which surrounds the judgment of divorce in this case includes the presumption of the existence of every essential fact which must have existed in order for the court to have rendered a valid decree. The record in the divorce case does not disprove or challenge the existence of any such fact. We presume that the petition filed therein stated a cause of action and was accompanied by allegations of residence as required by statute, and that all essential allegations were proved by substantial evidence and to the satisfaction of the trial judge who heard the cause.

Plaintiff's proof concerning the domicile of defendant at the time the divorce suit was instituted is very unsatisfactory. It cannot be said to be sufficient to justify a finding either that defendant was or was not a resident of Missouri at that time, or that he had or had not been a resident of this State for at least a year next prior thereto. It is wholly insufficient to overcome the presumption that defendant was then, and had been for one year next prior to the filing of said petition, a *bona fide* legal resident of this State, which fact, presumably, was alleged and proved to the satisfaction of the court before the divorce decree was granted. The burden was on plaintiff in this case to prove the allegations of her petition by a preponderance of the evidence. This she has not done.

Plaintiff also contends that the decree is invalid because she was not served with process and had no knowledge of the institution of the suit for divorce until a year and a half after the decree was granted. We think she has also failed to prove this allegation by a preponderance of the evidence. Her own testimony is to the effect that she and defendant discussed a separation and that she signed some kind of paper, without reading same. The attorney, whose testimony plaintiff offered, stated that Lewis wrote him about procuring a divorce in Bethany *prior to October 1, 1931,* that plaintiff and defendant appeared in his office together the day the petition was filed, and that plaintiff signed an entry of appearance, which he filed in court. Plaintiff denied that she had ever, prior to the trial of the instant case, seen the attorney-witness, or that she had ever been in his office. It is a fact, however, that the court records show the filing of an entry of appearance signed by plaintiff; and plaintiff testified that *she* suggested that they go to Bethany, that while there they dis-

cussed a separation, and that she signed some undescribed instrument. The learned trial judge, who heard the testimony in this case, saw and observed plaintiff and the attorney-witness on the witness stand. He, in effect, found that plaintiff signed and permitted to be filed an entry of appearance. Under the circumstances here shown we will defer to his finding and judgment in this respect. [Darling v. Darling, 167 S. W. 1166.]

Plaintiff urges that the decree of divorce should be set aside because of fraud practiced on the court in regard to defendant's legal residence and service of notice on plaintiff. This contention, necessarily, involves a consideration of what has previously been said herein. It is well settled that circuit courts have inherent power to set aside judgments and decrees, including decrees of divorce, obtained by fraud. [17 Am. Jur. 383.] The same rule that governs in such cases generally also applies in actions brought to set aside divorce decrees. Concerning a suit to set aside a judgment on the grounds of fraud it has been said: "It is an independent equitable action to set aside a judgment on the grounds of fraud, the burden rests upon the party seeking such relief to establish the alleged fraud by evidence and proof that is so cogent, strong, and convincing as to leave no reasonable doubt of such fraud and the fraud must be in the procurement of the judgment, as distinguished from matters going to the merits of the cause." [Weulker v. Maxwell, 70 S. W. (2d) 1100, l. c. 1102.]

The above rule should be especially observed in a case, such as this, where the decree of divorce sought to be set aside was granted eleven years before the institution of this suit, during which time defendant remarried and became the father of a child of that marriage. The evidence in this case, as has been previously stated herein, is not of that character.

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.