Maybel **COLEMAN**, Respondent,

v.

John W. **COLEMAN**, Appellant.

No. 7328.

Springfield Court of Appeals.

Missouri.

April 12, 1955.

Percy W. Gullic, Alton, Esco V. Kell, West Plains, for appellant.

R. D. Moore, A. W. Landis, West Plains, for respondent.

McDOWELL, Presiding Judge.

This is an equity action to set aside a decree of divorce on the ground of fraud. The cause was tried in Oregon County, Missouri, December 18, 1953, and judgment entered for plaintiff setting aside the divorce decree. Defendant appealed.

January 5, 1953, John W. Coleman filed an action for divorce in Oregon County, against his wife, Maybel Coleman. In his verified petition he alleged:

"Plaintiff further states that the defendant is a non-resident of the State of Missouri, and that process of service can not be had upon her in said state; that the last known address of defendant is and was: Maybel Coleman, 120 South Clinton, City of Dallas, State of Texas."

Upon this allegation service of notice upon the defendant by registered U. S. mail was ordered. It was mailed to the address of defendant as stated in the petition and was returned to the clerk's office marked unclaimed.

Esco V. Kell, attorney for plaintiff, was notified by the clerk of the failure to get service upon the defendant by mail and on March 24, 1953, said Kell filed an affidavit for service by publication on defendant as a non-resident. This affidavit stated that the defendant was a non-resident of the state of Missouri and could not be served personally and that her present address was to plaintiff unknown. Upon the affidavit service by publication was had upon the defendant by publishing notice, as required by law, in the "South Missouri Democrat", a weekly newspaper published in Oregon County; that the last publication was March 19, 1953.

August 5, 1953, the divorce action was tried and decree granted.

Plaintiff's petition alleged that the purported decree of divorce, awarded by the court in defendant's divorce action, was rendered as a result of fraud upon the court in the very procurement of said judgment because plaintiff, at the time of the institution of the divorce action, was not a non-resident of the state, which fact was known to the defendant.

It alleged that plaintiff was visiting her daughter in Texas and while there contracted tuberculosis, was confined to her bed, and, as a result thereof, was prevented temporarily from returning to Missouri; that at all times she remained a resident of Missouri; that her clothing and personal effects remained in the family home at Thayer, Missouri; that her intention was to return to defendant as soon as her health would permit and that all of such facts were known to defendant at the time he instituted suit and appeared in court to testify in said cause.

It stated that the affidavit for service in the divorce suit that the address of plaintiff was unknown, was untrue; that defendant was in constant communication with plaintiff by mail and well knew her mailing address, including city and street number; that such allegation was made to prevent the clerk from informing plaintiff of the pendency of the divorce suit as required by law.

The petition alleged that plaintiff heard rumors that defendant was suing for divorce; that she had her daughter call him by long distance telephone and asked him if he had such suit pending and defendant denied it; that the first definite information plaintiff had of the granting of the decree was more than 30 days after the decree had been entered.

It stated that all of the acts of defendant enumerated in the petition were false and a fraud upon the court; that defendant is seized of real and personal property of large value and the fraudulent acts of defendant and false allegations made in his divorce petition were for the purpose of depriving plaintiff of her rights in said property.

The answer admitted that service was had by publication in the divorce suit based upon an affidavit filed in said action by plaintiff's attorney which stated that the defendant was a non-resident of Missouri and that her present address was to plaintiff unknown; that defendant secured a divorce as alleged in the petition but denied generally all allegations in the petition alleging fraud in the procurement of the divorce.

Plaintiff's evidence is that she was married to defendant in 1940 and their home was in Thayer, Oregon County; that her married daughter, Mrs. Ross, resided at 120 South Clinton Street, Dallas, Texas; that in September, 1952, defendant wanted to redecorate the house and asked her to visit her daughter, which she did. Plaintiff testified she had been visiting around over the country prior to this visit and had visited her sister living in Arkansas some three times. She stated that at the time she left for her daughter's home there had been no trouble between them and they had never discussed getting a divorce; that she left a part of her clothing at home and her household goods and, at no time, ever intended to make her home in Texas.

Plaintiff testified that while in Texas she was in constant communication with her husband by letters and telephone calls and that defendant, at no time, ever mentioned the subject of divorce. Plaintiff stated that on January 5, 1953, she had a hemorrhage of the lungs, was in a hospital four days and, by doctor's order, was sent to the home of her sister, where she stayed a month and, with the exception of this period of time, she lived with her daughter. Plaintiff and defendant had been married before and Mrs. Ross was a daughter by a former marriage. She stated that while at her sister's she heard a conversation between her sister and defendant over the telephone wherein defendant denied he was suing for divorce and stated he did not want to talk to plaintiff. This conversation occurred between the 9th and 17th of January, 1953.

Plaintiff testified she went to the hospital January 7th; that she did not see the letter containing the service by mail nor did anyone tell her about such attempted service.

She identified 17 letters, written by defendant, some to plaintiff and some to plaintiff's daughter and baby and plaintiff, all of them expressing defendant's affection for them and sending them money for their support. She stated she did not know whether the last $100, sent to pay her doctor bill, was a check made to her or to her sister but she testified that after January 5th, the date of filing of divorce action, she continued to receive money from defendant; that the last money she received was August 15, 1953. She stated the first time she heard that defendant was getting a divorce was April 6, 1953, when her son-in-law, who lived in St. Louis, told her; that she called defendant on the 7th and asked him if he were getting a divorce and he denied it. She testified the first time she learned that the divorce had been granted was September 7th; that she had been continuously living with her daughter at 120 South Clinton, Dallas, since October 31, 1952, until after the granting of the divorce when her daughter moved to 333½ West 10th Street.

On cross-examination plaintiff denied that she had not lived in Missouri since June, 1952, and stated she came back to Thayer on August 8, 1952, and stayed until September; that she still lives with her daughter in Dallas. She stated that defendant sent her money in her name until she went to the hospital, at which time he sent it in the name of her daughter so there would be no trouble in getting the checks cashed. She testified that at the time the affidavit for publication was made

in the divorce action, she was living at 120 South Clinton Street, Dallas.

Defendant's testimony is that the conversation on the telephone between plaintiff's sister and defendant, testified to by plaintiff, was not with defendant but with defendant's son; that his son sent money at different times to care for the expenses of plaintiff; that he told defendant about the need for the $100 to pay hospital bills and that defendant sent the money.

The court refused to permit the witness to testify as to a conversation with plaintiff's daughter in which the daughter stated that plaintiff had refused to accept the service by mail. There was testimony that some years prior to plaintiff's going to Texas, she told a neighbor that as soon as her daughter finished high school she was going to leave.

Defendant testified that he was 67 years old, a resident of Thayer, Oregon County, and had been in the employment of the Frisco Railroad, as engineer, for 40 years. He denied any conversations with plaintiff on the telephone about getting a divorce. He denied he sent money directly to her after filing the divorce petition but admitted writing the letters to his step-daughter, Mrs. Ross, and admitted his signature on them. The letters showed he included his wife's name in them in various endearing terms. He gave this testimony:

"Q. Did you know where she was at the time you filed this suit for divorce? A. 120 South Clinton.

"Q. Is that the address you gave in your petition? A. Yes, sir."

He stated he knew all the time that mail went to Betty's home and returned but he did not know that his wife was actually there.

As to his wife's having tuberculosis, defendant testified he had her examined by five doctors in St. Louis, during the 1940's, and that she was under continual treatment of a doctor until she left; that she was treated by doctors in St. Louis, West Plains, Jonesboro, and a doctor at Alton; that X-rays were made which showed she did not have tuberculosis.

Defendant denied that he had ever told his wife he wasn't going to get a divorce. He stated he didn't even talk to her. He denied that he told a neighbor woman that he hadn't sued for divorce.

In our opinion we will refer to appellant as defendant and to respondent as plaintiff, the position they occupied in the lower court.

◼ In equity actions we review the record de novo and give such judgment as the trial court should have given. Section 512.160 RSMo 1949, V.A.M.S.; Handlan v. Handlan, 360 Mo. 1150, 232 S.W.2d 944; Milgram v. Jiffy Equipment Co., 362 Mo. 1194, 247 S.W.2d 668, 671, 30 A.L.R.2d 925; Junkins v. Local Union No. 6313, Mo.App., 271 S.W.2d 71, 75.

◼ In order to vacate a judgment of the court of competent jurisdiction upon the ground of fraud in the procurement of such judgment, such fraud must be shown by clear, strong, cogent, and convincing evidence leaving no room for reasonable doubt of its existence. Reger v. Reger, 316 Mo. 1310, 293 S.W. 414, 420, 421; Nieman v. Nieman, Mo.App., 127 S.W.2d 34, 36(1, 3); Butler v. Walsh, Mo.App., 235 S.W.2d 826, 833.

◼ Under the legislative enactments of our state, judicial decrees of divorce to bona fide residents who comply with the statutory requirements, where statutory service merely is had upon the non-resident party, are valid. Coffey v. Coffey, Mo. App., 71 S.W.2d 141, 142(3).

◼ The burden of proving fraud in the procurement of a divorce rests upon the plaintiff.

◼ Presumption is in favor of good faith, innocence and honesty and fraud is not to be presumed but must be established as proof by the party alleging fraud. Reger v. Reger, supra.

In Lewis v. Lewis, 238 Mo.App. 173, 176 S.W.2d 556, 559, the law is stated:

" * * * The Supreme Court has declared it to be the universal rule that a state cannot exercise, through its courts, jurisdiction to dissolve a marriage when neither spouse is domiciled within the state. * * * The same court, in that decision, also declared the law to be that a divorce decree, obtained under such circumstances, could be set aside for fraud in a direct action such as this; but it held that, in order to vitiate such a judgment on the grounds of fraud 'the same must be shown by clear, cogent and convincing evidence.' "

■ Under the law in the instant case the divorce decree rendered in favor of the defendant, if obtained by fraud, can be set aside in this action, but, the burden is upon the plaintiff to show such fraud by clear, cogent and convincing evidence. However, the ultimate issue is not whether the allegation that plaintiff was a non-resident is true or untrue but whether such allegation was made by the defendant knowing that it was untrue or without knowing or having reasonable grounds to believe it was true, in other words, whether it was fraudulently made. Nieman v. Nieman, supra, 127 S.W.2d at page 36.

Defendant's first contention is that in his petition for divorce he gave the correct address of his wife; that he met the requirements of the statutes and that it was error for the court to set aside the decree on ground of fraud, citing Section 506.160 RSMo 1949, V.A.M.S.

In our opinion we stated that judicial decrees of divorce to bona fide residents who comply with the statutory requirements, where statutory service merely is had upon the non-resident party, are valid. This law was so declared in Coffey v. Coffey, supra.

■ Under the law there is a presumption in favor of the good faith, innocence and honesty and fraud is not to be presumed but must be established by proof by party alleging it. It is also the law in this state that a decree of divorce can be set aside on the ground of fraud in a direct attack upon the judgment. Nieman v. Nieman, supra; Lewis v. Lewis, supra.

In the last cited case, 176 S.W.2d on page 559 of the opinion, the law is stated: " * * * The same court, in that decision, also declared the law to be that a divorce decree, obtained under such circumstances, "could be set aside for fraud in a direct action such as this; but it held that, in order to vitiate such a judgment on the grounds of fraud 'the same must be shown by clear, cogent and convincing evidence.' "

In the instant case plaintiff contends that the statements in defendant's petition for divorce and in the affidavit filed therein stating that plaintiff was a non-resident of the state and her present address unknown to defendant were false and known by the defendant to be false and were made for the purpose of deceiving and perpetuating of fraud upon the court.

The burden of proof rested upon plaintiff to show such fraud by clear, strong, cogent and convincing evidence, leaving no room for reasonable doubt of its existence.

The ultimate issue is not whether the allegations that plaintiff was a non-resident and her present address unknown to the defendant were true or untrue but whether such allegations were made by the defendant knowing that they were untrue or having reasonable grounds to believe they were untrue. There is no merit in defendant's contention under this allegation of error.

We agree with the law as stated in defendant's second allegation of error that a decree of divorce based upon service by publication cannot be set aside by a mere showing that the allegations upon which the order of publication was made were untrue. We, likewise, agree with the law as declared under point III of defendant's brief, that is, that fraud must be shown by clear, strong, cogent and convincing evidence leaving no room for reasonable doubt of its existence.

Under point IV of defendant's brief, he contends that the burden rests upon the party seeking relief by fraud. This is the same matter we have just passed upon and is a correct statement of the law.

■ Under the evidence in this case we find that the trial court was justified in setting aside the decree of divorce on the ground of fraud. The service by publication had upon plaintiff was secured by affidavit alleging plaintiff to be a non-resident of Missouri and that her present residence was to the defendant unknown. The evidence shows these statements not only to be untrue, but, that the defendant, at the time they were made, knew such statements were untrue. Defendant had been in constant communication with his wife by letters and by telephone. He had denied to her that he was suing for divorce and had denied such fact to her neighbor. The publications were placed in a paper where plaintiff was likely not to know of the pendency of the action. The letters, in evidence, written by defendant to plaintiff, sending her money, speaking to her in endearing terms, could but be interpreted as means of deceiving plaintiff as to such divorce action. The evidence clearly shows that plaintiff was a resident of Missouri at the time of the filing of the divorce action and of the affidavit upon which service by publication was made, which fact was known to defendant. Defendant did not deny that he knew the mailing address of his wife at the time he made the affidavit stating he did not know it. The evidence becomes more convincing of defendant's intention to defraud the court in getting service by publication upon plaintiff in that just as soon as the divorce was granted, he quit sending money to his family.

We find that the fraud alleged in plaintiff's petition was shown by clear, strong, cogent and convincing evidence leaving no room for reasonable doubt of its existence.

Judgment affirmed.

STONE and RUARK, JJ., concur.