Polly Maranda GRANT, Plaintiff-Appellant,

v.

Henry Sherman GRANT, Defendant-Respondent.

No. 7790.

Springfield Court of Appeals.
Missouri.

May 15, 1959.

James V. Billings, Kennett, for appellant.

No appearance for respondent.

McDOWELL, Judge.

Plaintiff appealed from a judgment of the Circuit Court of Dunklin County, Missouri, dismissing her petition for divorce for the reason that plaintiff did not reside in Dunklin County at the time of the filing of the petition and had not resided in the state for at least two years.

Polly Maranda Grant, plaintiff, and Henry Sherman Grant, defendant, were married in Arkansas in 1929 and moved to Missouri in 1953, where they were living at the time of separation. Marital difficulties arose and plaintiff filed her action for divorce August 14, 1955, in the Circuit Court of Dunklin County, charging her husband with numerous indignities which she alleged rendered her condition as defendant's wife intolerable; among the indignities alleged were that defendant, in 1954, was confined in a sanitarium in Mt. Vernon; that while he was so confined plaintiff was forced to work to support the family; that defendant fiercely resented the fact that plaintiff worked for others instead of nursing him; that from February, 1955, to date of separation defendant continually quarreled at, berated and abused her; that on August 14, 1955, he violently assaulted plaintiff with a weapon, threatened to kill her, to knock off her head and ordered her to leave the home; that he kicked her, which conduct caused her to leave.

The petition alleged that plaintiff has been a resident of Dunklin County for more than one year next before the filing of the petition.

Entry of appearance and waiver of service was filed by the defendant who did not appear at the trial and the cause was submitted to the court on plaintiff's evidence.

February 9, 1959, the court entered final judgment to wit: "Now on this day, petition herein is dismissed by the Court, because at the time of filing of petition, plaintiff did not reside in this State and had not so resided for at least two years."

Errors assigned are: that the judgment was totally unsupported by the evidence; that all the evidence establishes that plaintiff has kept and maintained her legal residence in Senath, Dunklin County; that she at no time changed her residence from Dunklin County while absent therefrom temporarily from the state, working.

The testimony offered showed that plaintiff and the defendant were married in Lake City, Arkansas, December 13, 1929, and lived together until August 14, 1955. At time of separation they were living about one-fourth mile from Allen Island School in Dunklin County. In 1953, defendant was pronounced T. B. and went to Mt. Vernon Sanitarium. Plaintiff was a practical nurse and had been taking care of old folks; that while defendant was in the sanitarium plaintiff worked at a restaurant in the daytime and cared for her children at night. Plaintiff testified that when her husband returned from Mt. Vernon in the spring of 1954 he continually berated and abused her for not caring for him while in the sanitarium; that on August 14, 1955, she returned home from work and the defendant started in on her, told her he was going to kill her, grabbed up a stick and said he would kill her; that her son stepped in and caught his hand. She testified that defendant threatened to knock her head off; that she started to leave and got out in the yard and defendant told her if she did not go back in the house he would kick hell out of her; that he had ordered her to leave. She stated that defendant slept in the car all night and the next morning she left and they had not lived together as man and wife since. There is no controversy that sufficient evidence was offered to justify the granting of the divorce.

As to residence, plaintiff's evidence is as follows:

"Q. Now, you state here that you moved to this county in 1953? A. That's right.

"Q. And you allege here that you are a resident of Dunklin County, Missouri, and have been for more than a year before the filing of this petition? A. Yes.

"Q. Are you a resident of this county? A. Yes, I call this my home. I keep my stuff at my sister's, Senath, Missouri.

"Q. Is all it at her home? A. Some of it's at Gladys Jordan's home.

"Q. Where does she live? A. She lives in Senath.

"Q. And have you ever voted anywhere else? A. No.

"Q. You still work for a living, do you? A. Yes."

Witness testified that her work took her to other cities. The court asked the witness these questions:

"Q. Where have you lived since November a year ago, Mrs. Grant? A. Well, I have been in different towns, different states. I live in Detroit, Michigan, at the present time, I'm in Detroit now.

"Q. How long have you lived in Detroit? A. Well, I have been here and there and backwards and forth. Of course, I come home and then I go back, and I call this my home, though. I don't call Detroit my home.

"Q. What I asked you was how long you had been in Detroit? A. Well, I have been in Detroit off and on, of course not steady, but off and on for about a year, but I don't stay there steady. I have been in several different states since then.

"Q. How long has it been since you stayed in Dunklin County for as much as a week at a time? A. Well, I have been in and out here, I was here in November and stayed a week, and I have been in and out to see my children, and contacts to see whether I could hear from them, but I was afraid to let him know I was in town every time I was, because he had threatened to kill me. He had told others he would kill me.

"Q. Where is your home in Dunklin County? A. Senath, Missouri.

"Q. Whereabouts in Senath? A. I don't know the name of the street. Karnes Street, it's at my sister's home.

"Q. How many times do you get back to Dunklin County and Senath? A. I try to come back about every six weeks, but of course I don't make it every time.

"Q. Where does your husband live? A. He lives out here on one of Dr. Spence's place."

At the end of this examination by the court he stated that he thought proper residence had not been made.

Vernie Sutton testified for plaintiff that she lived on Karnes Street in Senath and has lived there since 1955. She stated:

"Q. Now, you may tell the Court if your sister, Maranda Grant, has any of her effects stored at your place? A. Yes.

"Q. How long has she had them stored there? A. Since '55".

The evidence of this witness was to the effect that part of plaintiff's goods were stored at Gladys Jordan's place just two houses from where the witness lived. This evidence was given:

"Q. All right. Do you know whether she counts your home her home? A. Yes, she does."

Myrtle George testified that she lived on South Senath, Karnes Street and has known plaintiff for ten years; that her home is two houses from the Sutton home. She testified to the good reputation of plaintiff for being an upright, moral virtuous woman and stated that her reputation was good. She gave this evidence:

"Q. Do you see her at Mrs. Sutton's place from time to time? A. Yes, I do.

"Q. Do you know anything about her effects being stored there at Miss Grant's— A. Yes, sir."

John Davis testified that he had known plaintiff since 1934 or '35 and had seen her in Senath lots of times, she and her husband.

Other evidence was offered as to the good reputation of plaintiff for being a good, moral, upright person.

The sole issue before this court for judgment is, did the trial court err in dismissing plaintiff's petition for reason that she failed to offer sufficient evidence to show that she was a resident of Dunklin County, and of the state, for one year prior to the date of the filing of the petition as required by section 452.050 RSMo 1949, V.A.M.S.?

Section 452.050 RSMo 1949, V.A.M.S. reads: "No person shall be entitled to a

divorce from the bonds of matrimony who has not resided within the state one whole year next before filing of the petition, unless the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state; provided, however, that when the plaintiff shall have resided within this state one whole year next before the filing of petition and the defendant shall plead and prove sufficient facts, as provided in this chapter, which shall entitle such defendant to a divorce, the same shall be granted although the defendant may not be a resident of this state prior to or at the time such divorce be granted."

■ It is the duty of the court of appeals in a divorce action to review the case upon both the law and evidence and reach its own conclusion, but the court is not authorized to set aside a judgment unless clearly erroneous and due regard must be given the trial court to judge of the credibility of the witnesses. Phelps v. Phelps, 241 Mo.App. 1202, 246 S.W.2d 838; Paxton v. Paxton, Mo.App., 319 S.W.2d 280; section 510.310, subd. 4 RSMo 1949, V.A. M.S.

■ The question of whether the wife met necessary residential requirements is one of fact to be determined in the first instance by the trial court. May v. May, Mo. App., 294 S.W.2d 627, 634 [2–7].

■ It is not essential that the allegation of the petition follow the precise language of the statute in this respect. Coulter v. Coulter, 124 Mo.App. 149, 100 S.W. 1134; Phelps v. Phelps, supra, 246 S.W.2d at page 842 [4] and cases cited.

■ The period of residence prescribed by the statute is jurisdictional. Phelps v. Phelps, supra; Gooding v. Gooding, 239 Mo.App. 1000, 197 S.W.2d 984, 986; Kennedy v. Kennedy, 223 Mo.App. 1116, 23 S. W.2d 1089; State ex rel. Stoffey v. La Driere, Mo.App., 273 S.W.2d 776, 781, [15, 16]; 24 Mo.L.Rev. 218.

■ It was stated in State ex rel. Stoffey v. La Driere, supra, 273 S.W.2d at page 781 [13, 14]: "* * * 'the Missouri decisions make it plain that the "residence" required by our divorce statutes is equivalent to "domicil" and that the word "domicil" as used in this connection means actual residence within the state with the intention to remain there permanently or for an indefinite time. This view is in accord with the great weight of authority in the United States.' Phelps v. Phelps, supra, 246 S.W. 2d 845."

As stated in the La Driere case, supra, 273 S.W.2d on page 781, the question is, did plaintiff leave her domicile in this state and go to another state with the intent to remain there permanently or for an indefinite time without any fixed purpose to return to her place of abode in this state? Unless her departure from this state and her presence elsewhere were so characterized her domicile remained in Missouri.

The petition in the instant case alleges facts showing the purpose of plaintiff in leaving the state. Paragraph 8 of the petition reads:

"Plaintiff states that she and the family moved to Dunklin County, Missouri, in 1953, but that after the final separation in August, 1955, she was forced and compelled to work at other places, but that she has kept her belongings stored in Dunklin County, Missouri, and returned as often as she could, and that Dunklin County, Missouri, is her home."

Paragraph 9 of the petition reads: "Plaintiff further states that she is now and has been a resident of Dunklin County, Missouri, for more than one whole year next before the filing of this petition, * * *"

The evidence in the instant case conclusively shows that both plaintiff and the defendant were residents of Dunklin County at the time of the separation and had been since 1953, and that defendant is still a resident of Dunklin County. The testimony of

plaintiff is to the effect that she is a practical nurse and, at the time of the filing of the divorce and since the separation, for at least a part of the time, she had been temporarily in Detroit, Michigan, and in other states but that she still continued to keep her residence in Senath, Dunklin County, Missouri.

It was held in Beckmann v. Beckmann, 358 Mo. 1029, 218 S.W.2d 566, 569 [7, 8], that where a defendant was in California because of ill health but who had not changed his legal residence and who did not intend to relinquish his Missouri domicile, he was a legal resident of Missouri.

■ "Residence" is acquired by an intention to live in a place permanently or for an indefinite time, coupled with actual bodily presence, though the presence need not be continuous. Madsen v. Madsen, Mo. App., 193 S.W.2d 507.

In Trigg v. Trigg, 226 Mo.App. 284, 41 S.W.2d 583, 589 [4–6], the Kansas City Court of Appeals stated:

"It is obvious that this language was meant to apply to the facts and circumstances in the case then under consideration, and it is equally obvious that it is directed solely to the elements necessary to *create* a residence. It has no reference whatever to the elements necessary to *maintain* said residence. The case is not an authority for the proposition that there must be a continuous physical presence for one whole year before suit. To give such interpretation to the statute would be unreasonable and oppressive. We hold in accord with the general expression of the law that residence is largely a matter of intention evidenced by some act or acts in conformity with such intention, and that a residence once established within this state and not thereafter changed is sufficient for the maintenance of a divorce action, notwithstanding the physical absence of the resident for a short or long period. In the case of an army officer it would be peculiar-

ly arbitrary and unjust to deny him the right accorded any other citizen merely because of his physical absence from the state in the performance of his duty as a soldier. His absence is not of his own volition, but is occasioned by necessary obedience to martial orders. The continuity of residence is not broken by a mere bodily absence from the state. * * *"

We agree with the law as stated in Phelps v. Phelps, supra, 246 S.W.2d at page 845 [11–12] that continuous residence does not require continuous presence but is compatable with temporary absences. Mere temporary absence from the state, without intention of remaining away, does not cause a person to lose his (or her) residence within the meaning of the laws. See authorities cited.

■ Under the particular facts and circumstances in the instant case we believe that the trial court was in error in reaching the conclusion that plaintiff was not a resident of Dunklin County and of the state of Missouri for one whole year next before the filing of the petition. Her absence temporarily from the state did not constitute a change of residence where she did not intend to relinquish her domicile in Missouri. Actual personal presence in a new place and intention to remain there, either permanently or for indefinite time without any fixed or certain purpose to return to former place of abode constitutes change of domicile. Phelps v. Phelps, supra. The evidence in the instant case did not fulfill this requirement for change of domicile but fully supports plaintiff's contention that she did not intend to.change her place of residence but was only temporarily out of the state.

Judgment reversed and remanded with directions that a decree of divorce be entered for plaintiff as prayed for in the petition.

STONE, P. J., and RUARK, J. concur.