**AUTOMOBILE CLUB OF MISSOURI, a Corporation, (Plaintiff) Appellant.**

v.

**Fred J. HOFFMEISTER, William Kohn, Christian B. Peper, John A. Arnold and Albert D. Krueger, as Members of and Constituting the Bar Committee of the Eighth Judicial Circuit, (Defendants) Respondents.**

No. 30590.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1960.

Stemmler & Stemmler, St. Louis, for appellant.

Victor Packman, Hyman G. Stein, St. Louis, for respondents.

Fred J. L. Schuler, Clayton, Amicus Curiae.

ANDERSON, Judge.

This is an action for a declaratory judgment brought by the Automobile Club of Missouri, a corporation, against the Eighth Circuit Bar Committee, the object of which is to have determined whether or not certain of its practices constitute the unlawful practice of law. Defendants by their answer and counterclaim sought a declaration that said practices and other services performed by said Automobile Club for its members did constitute the unlawful practice of law, and were in violation of an injunction previously entered in a suit brought against plaintiff. From an adverse finding and judgment plaintiff has appealed.

The petition set out the services concerning which a declaration was sought, as follows:

"a. When a member of the club has been charged with the violation of an ordinance of the City of St. Louis regulating the operation of automobiles on the streets and highways of the City and is summoned to appear in City Court (the municipal court of said City) and such member wishes to enter a plea of guilty to such charge, the Club (plaintiff) upon the member's request, has its representative appear in the City Court and enter the plea of guilty on such member's behalf.

"b. When a member of the Club who is so charged with a violation of such city ordinance finds it impossible to appear in the City Court on the day set for the hearing of such charge against him and desires to have the hearing continued until a later date, the Club (plaintiff), upon the member's request, has its representative appear in the City Court on behalf of the member and transmit to the Court the member's request for the continuance."

Defendants in their answer alleged that the services rendered by plaintiff to its members, as set forth in the petition, and those detailed in said answer (hereinafter referred to) were among the activities and services which plaintiff was by a previous judgment restrained from performing. The answer by paragraph 9 alleges that plaintiff not only was engaged in the practice of entering pleas of guilty for its members as set forth in the petition, but in certain instances it would enter pleas of not guilty. In paragraph 10 it is alleged that plaintiff furnished on behalf of its members, and members of affiliated automobile clubs, legal services in appearances by its attorneys before courts, committees, commissions and legislative bodies. By paragraph 11 it alleged that plaintiff through its legal department furnished to its members and to members of affiliated automobile clubs, as an in-

cident of membership, legal services, advice and counsel with respect to questions of law relating to the ownership and operation of motor vehicles, and with respect to alleged violations of traffic laws and ordinances. It is then alleged that the activities and services on the part of plaintiff as alleged in its petition, and the services complained of in said answer are violations of the laws and statutes of Missouri with respect to the doing of law business and the practice of law by a corporation, and are violative and in contravention of the previous judgment and decree of the Court.

The prayer of said answer was that the Court adjudge and decree that the activities alleged in plaintiff's petition and those alleged in said answer constitute the practice of law and the doing of law business by a corporation, contrary to the statutes, and violative of the decree theretofore entered by the Court in the case of Conway Elder, et al. v. Automobile Club of Missouri, Cause No. 214116–B.

The evidence shows that it has been the practice of the Automobile Club to have its representatives appear in the City Courts of the City of St. Louis and enter pleas of guilty for its members when so requested. The representatives so appearing are members of plaintiff's legal department. This service is only rendered in cases where it is known from experience what the fine is likely to be, that is, in cases where the courts have developed what might be termed a schedule of fines. The attorneys for the club will not enter such a plea in a case where the member has had a number of prior convictions which might result in the suspension of his driver's license. In such cases the member would be told that it would be necessary for him to appear personally or employ counsel to represent him. This occurs when the member's driver's license has three prior convictions endorsed on it. If the charge against the member is driving while intoxicated, or leaving the scene of an accident, the attorneys for the Club will not enter a plea of guilty for him.

The usual procedure followed in cases, where the Club's representative enters pleas of guilty, was testified to by Mr. Ralph G. Ranney, Jr., an attorney, employed by plaintiff. He testified,

"A member brings his case to us. He has a ticket for traffic violation and that he wants to pay the fine without having to appear in court. We take the ticket and the amount of money that we think will be necessary to pay the fine and the member's driving license, go to court and enter a plea of guilty for the member, pay the fine and return the license to the member. Those cases where the member is not able to get the money or the driver's license to us in time for us to take care of the case on the first setting, we have the case continued to some future date when we can get the driver's license or the money.

"* * * I might point out that with all of the many traffic violations that there are, there are some which hardly ever appear in court and in those cases where we find a member has a ticket for a violation that hardly ever appears in court and a very minor offense, we will nearly always continue the case on the first setting and at the time I will ask the Judge if he can tell me how much the fine in this case will be, and if it is an amount that, for instance, say, $25.00 or less, then I know it is a routine violation and we collect the money and go to court on the next setting and pay the fine.

"* * * I would say that in most cases where members indicate to us in conversation with us before the case comes into court they are going to enter a plea of not guilty, that I do nothing at all in that case. I don't even call the case into court for them. There are some cases, however, where a member who, for instance, might not be able to get to court at ten o'clock or even at 10:30 or perhaps 11:00 in

the morning is apprehensive about the court deciding or calling a bond forfeiture in his case or ordering him arrested, and in those cases, for example, I tell the prosecutor that Mr. Smith is going to be in late this morning, he is going to enter a plea of not guilty, and then, of course, I won't defend him. I always tell him that. In cases of that nature or cases where the defendant is sometimes in court at that time, I will call the case and I will call it to find out whether he had gotten to court or not, and as I see him rise up in the audience and start to walk towards the front of the court room, I motion to him to sit back down with my hand and I tell the prosecutor this is going to be a plea of not guilty, he can call it later on the trial docket and I will not defend him.

" * * * There have been times when we have asked for a continuance when we knew the person was going to plead not guilty eventually. For instance, if he was out of town and he had told us, 'I'm going to be gone three weeks from now. I would like to enter a plea of not guilty. Can you please have the case continued so that I can have an opportunity to appear and plead not guilty?' "

The representatives of the Automobile Club appear before the City Courts of St. Louis in from 4,500 to 5,000 cases per year. The Club has 150,000 members in the St. Louis area. In the numerous police courts in the cities in St. Louis County, the Club furnishes services similar to those rendered its members in the City Courts of St. Louis.

Plaintiff has in its possession a digest of the motor vehicle laws of every state in the Union and the Dominion of Canada. If a member calls in and inquires about the speed laws of a state he is given that information. The Club will explain to any member any part of the motor vehicle law or the safety responsibility law. Mr. Wilson, plaintiff, General Counsel, testified: "We have never tried to interpret the laws. In most in-

stances where we were asked specifically about some particular section of the law, we would quote the section of the statute and state that this section so and so provides so and so." Mr. Tversky, plaintiff, General Attorney, testified: "If a person inquires as to what he is required to do under the motor vehicle code as far as towing a car, what permits he may need, we will go to the Digest of Motor Vehicle Laws and check his itinerary. If he is going from here to California, he is going through six states; if he tells us the states, we will tell him what is required of him in each state so that he may abide by the law. * * * We get inquiries about motor vehicles laws all the time. Q. Do you answer those by letter where people are beyond phone range and calls for some response and tell them what the law is or what the answer is to their problem? A. Yes." The witness further testified: "Q. Do you ever have any problems pertaining to sales taxes or discuss the tax question with a member of the club also referred to you? A. We didn't have the problems, but we do have inquiries about sales taxes. * * * I don't recall any instances by letter, but we have had them by telephone and in person * * *. We apprise them of what is required of them before they can properly title their car. Under the sales tax and U. S. tax law, before a person can get a title or registration plate for an automobile, they must comply with certain prerequisites and among those prerequisites is the payment of any taxes due. If that tax is not paid at the time of the application for title or license, no title or license will be issued."

On November 3, 1941, in a suit brought by a committee of the St. Louis Lawyers Association against plaintiff herein, a consent decree was entered by which the plaintiff was enjoined from engaging in certain practices which were declared to constitute the practice of law. This case will hereafter be referred to as the Elder suit. Among the findings of fact in the decree in said suit were the following:

"2. * * * That it has been giving and providing legal services and legal advice relating to the ownership or operation of motor vehicles.

"* * * * * *

"6. That said defendant, through its agents, servants, employees and attorneys, has been appearing on behalf of, and furnishing representation for, members of said defendant and associated automobile clubs, in police and Justice of the Peace courts, and in proceedings in connection with alleged violations of laws or ordinances or promulgations or regulations thereunder.

"* * * * * *

"8. That said defendant has been operating a legal department, and has been furnishing legal advice and services therefrom and thereunder."

The decree then provided:

"It is, therefore, Ordered, Adjudged and Decreed by the Court as follows, to-wit:

"That said defendant, its agents, servants and employees are hereby restrained and forever enjoined from:

"(a) The furnishing or rendering of legal services, or the practice of the law as hereinabove set forth under Sections 2 * * * 6 * * * and 8 hereof."

The trial court on December 1, 1958, entered a Declaratory Judgment in the instant case, the pertinent parts of which are as follows:

"(1) On issues raised by plaintiff in its petition the Court adjudges and decrees that the Plaintiff has engaged in the unlawful and unauthorized practice of law in engaging in practices and services described in its petition, to-wit:"

There is then set out in haec verba the services detailed in plaintiff's petition which are alleged by plaintiff to be services performed for its member. We have in this opinion heretofore set out this portion of plaintiff's petition.

The Decree then proceeds:

"(2) On basic issues raised by Defendants in their Answer and Counterclaim and by Plaintiff's Reply, the Court adjudges and decrees that the Plaintiff has engaged in the unlawful and unauthorized practice of law in engaging in practices and services as follows:

"a. The Plaintiff, by its representatives and attorneys, appears for its members and members of affiliated Automobile Clubs, in police and other courts in the City of St. Louis, Missouri, and elsewhere in the State of Missouri and performs legal services for and on behalf of such members in such courts and enters for such members in cases pending, not only the plea of guilty, but, in certain instances, the plea of not guilty.

"b. The Plaintiff furnishes on behalf of its members and members of affiliated automobile clubs legal services in appearances by its representatives and attorneys before courts, requesting continuances for such members, and in written or telephone requests for continuances to Judges in behalf of such members.

"c. Plaintiff advertises to its members and prospective members that Plaintiff by and through a legal department maintained and operated by it furnishes to its members and members of affiliated automobile clubs, as an incident of membership, legal services and advice and counsel respecting and pertaining to questions of law and legal proceedings relating to the ownership and operation of motor vehicles in various jurisdictions and with respect to alleged violations of traffic laws and ordinances, and Plaintiff has been and continues to furnish said services.

"(3) The Plaintiff in engaging in the activities and practices and in render-

354

ing the services described in Sections (1) a. and b. and (2) a. b. and c. hereof has also violated the terms of a Consent Decree of the Circuit Court of the City of St. Louis in Cause No. 214,166–B (Div. 3), dated November 3, 1941, to which the Plaintiff was a party defendant and a Bar Committee was the party plaintiff.

"In said Decree the Defendant, its agents, servants and employees were restrained and forever enjoined from the furnishing or rendering of legal services, or the practice of law as therein described under Sections 2, 6 and 8 (relevant to this proceeding), based on stipulated findings of fact concerning the Plaintiff herein (which was the Defendant therein). This Court takes judicial notice of said findings, which read concerning the Automobile Club of Missouri:".

Sections 2, 6, and 8 of said prior Decree (heretofore set forth in this opinion) are then set out. The Decree in the instant case continues:

"(4) The Court finds the issues in favor of the Defendants and against the Plaintiff and restrains and forever enjoins the Plaintiff from engaging in the unlawful and unauthorized practice of law as detailed and covered in this Decree, and the Plaintiff and its agents, servants, attorneys, and legal representatives (now and in the future) are specifically enjoined from:

"a. Entering pleas of guilty and not guilty, or making of requests for continuances for and on behalf of its members and affiliated members in the city court or any other court in the City of St. Louis, Missouri, or elsewhere.

"b. From giving to its members and affiliated members advice and counsel either oral or written respecting and pertaining to questions of law and legal proceedings or taxes relating to the ownership and operation of motor vehi-

cles and with respect to alleged violations of traffic laws and ordinances.

"c. From maintaining a legal department for the purpose of solving individual legal problems of its members and affiliated members, or solution or disposition of transgressions of its members and affiliated members."

Under Section 484.020 RSMo 1949, V.A.M.S., it is unlawful for a corporation to engage in the practice of law or do law business. See also State ex rel. McKittrick v. C. S. Dudley & Co., Inc., 340 Mo. 852, 102 S.W.2d 895, and State ex inf. Miller v. St. Louis Union Trust Company, 335 Mo. 845, 74 S.W.2d 348. Plaintiff concedes this to be the law. However, it insists that in performing the services for its members as disclosed by the evidence it does not practice law or conduct law business as those terms are defined by the statute and decisions of the Supreme Court.

Section 484.010 RSMo 1949, V.A.M.S., defines these terms as follows:

"1. The 'practice of the law' is hereby defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

"2. The 'law business' is hereby defined to be and is the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending

to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever."

█ The foregoing definition is binding on the courts in any proceeding under Section 484.020 which makes a violation of said statute a misdemeanor, but is not binding in a proceeding such as the instant case. The power to regulate and define the practice of law and the doing of law business is a prerogative of the judicial department. The legislative department, under the police power, may enact laws declaring that certain acts constitute unauthorized practice of law and are punishable. But such statutes are merely in aid of, and do not supersede or detract from the power of the judicial department to define and control the practice of law. Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977; Hulse v. Criger, 363 Mo. 26, 247 S.W.2d 855; Rhode Island Bar Association et al. v. Automobile Service Association et al., 55 R.I. 122, 179 A. 139, 100 A.L.R. 226.

What constitutes the practice of law and the doing of law business is extremely difficult to define. Courts have therefore been reluctant to adopt an all-inclusive definition of those terms. Rather the determination of any issue that presents the question must depend upon the facts in each particular case. Our Supreme Court in the case of Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977, 982, for the purpose of the case then before it, defined the terms as follows:

"It would be difficult to give an all-inclusive definition of the practice of law, and we will not attempt to do so. It will be sufficient for present purposes to say that one is engaged in the practice of law when he, for a valuable consideration, engages in the business of advising persons, firms, associations, or corporations as to their rights under the law, or, appears in a representative capacity as an advocate in proceedings pending or prospective, before any court, commissioner, referee, board, body, committee, or commission constituted by law or authorized to settle controversies, and there, in such representative capacity, performs any act or acts for the purpose of obtaining or defending the rights of their clients under the law. Otherwise stated, one who, in a representative capacity, engages in the business of advising clients as to their rights under the law, or while so engaged, performs any act or acts either in court or outside of court for that purpose, is engaged in the practice of law." (101 S.W.2d loc. cit. 982).

Plaintiff contends that under the above definitions it is clear, that when its attorneys appear in court to enter pleas of guilty or to secure continuances for its members, the Club is not engaged in the practice of law. It is argued that to be so engaged one must appear in court as an "advocate" as that term is defined by Webster's International Dictionary, to-wit: "One who pleads the cause of another before a tribunal or judicial court; one who defends, vindicates, or espouses any cause by argument; a pleader."

Plaintiff says that its attorneys do not appear in court as advocates within the meaning of that term as defined, since they do not plead the member's cause, defend him or espouse his cause by argument. In fact, it is plaintiff's position that the acts of its attorneys, when appearing in Court, are of a non-legal character, being largely in the nature of messenger service which could very well be performed by laymen.

█ We cannot agree with this contention. It is our opinion that if one appears before any court in the interest of another, and moves the court to action with respect to any matter before it of a legal nature, such person appears as an advocate as that term is generally understood. In the case at bar, plaintiff through its attorneys, appears in court on behalf of its members and performs services therein for said members, which services, when not per-

formed per se, are customarily performed by attorneys, who have, in a properly conducted court, the exclusive right to be heard on behalf of others. The court, in accepting a plea of guilty or the granting of a continuance, is dealing with a matter of law, hence the person moving the court to such action is dealing with a legal matter, even though it does not require a high degree of professional knowledge and skill beyond familiarity with police court procedure. The simplicity of the acts performed should not be the controlling test. The conduct of legal proceedings has for many years been in the hands of judges and attorneys learned in the law. Experience has taught that such a system is for the best interest of all. No departure from this practice should in our judgment be sanctioned, either on the ground of simplicity or on the theory that a change such as suggested would be a benefit and convenience to those charged with the violation of traffic laws. The trial court properly declared that plaintiff through its appearances in the City Courts has engaged in the unlawful and unauthorized practice of law.

■■■ In the argument in appellant's brief it is urged that the record is devoid of any substantial evidence of plaintiff giving legal advice to its members. There is no specification in the Points Relied On in support of this argument. Supreme Court Rule 83.05, V.A.M.R., requires that in appellant's brief "The points relied on shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed. * * *." It is apparent that appellant failed to comply with this rule. It is not sufficient to state in the argument in the brief the Points Relied On by the appellant seeking a review of the trial court's rulings. That must be done under "Points Relied On." Clemons v. Becker, Mo., 283 S.W.2d 449. However, in the interest of justice we have examined the point and find there is no merit to the contention made. The evidence with respect to the giving of legal advice to members has heretofore been reviewed in this opinion. It was given by plaintiff's witnesses and, in our opinion, was competent and substantial evidence, and was sufficient to support the declaration made with respect thereto, and to authorize the court to enjoin plaintiff "from giving to its members and affiliated members advice and counsel either oral or· written respecting and pertaining to questions of law and legal proceedings or taxes relating to the ownership and operation of motor vehicles and with respect to alleged violations of traffic laws and ordinances."

■■ Appellant contends that the court erred in finding that plaintiff's practice of furnishing representation to its members in city courts violated the terms of the Consent Decree in the Elder case. In support of their contention it is urged that the Elder Decree was in the nature of a contract, and therefore, subject to the rules of interpretaton of contracts, including the principle that its meaning, scope and extent should be that which the parties place upon it. From this premise it is urged that since plaintiff has for 13 years subsequent to said Decree, without any objection from defendants, represented its members in City Courts on pleas of guilty and requests for continuances, the parties have construed the Decree in the Elder case as permitting such practice, and that the court below erred in not placing the same construction on said Decree.

Assuming that we may, in interpreting the meaning of consent decrees, apply the principles employed in the construction of contracts, there is no room for such a construction of the Elder Decree as urged by appellant. There is no ambiguity in said Decree that calls for the application of the principle contended for by appellant. Said Decree finds that defendant " * * * has been appearing on behalf of, and furnishing representation for members of said defendant and associated automobile clubs, in police and Justice of the Peace Courts,

and in proceedings in connection with alleged violations of laws or ordinances or promulgations or regulations thereunder." Said practice is then enjoined by said Decree. This language is plain and unambiguous.

■ Appellant is in error in its statement that the parties to this suit have construed the Elder Decree as permitting appearances in the city courts of the nature involved in this suit. Neither defendants nor their predecessors in office were parties to the Elder suit, and there is no evidence in the record that they had any knowledge, officially or otherwise, that the Elder Decree was not being observed until perhaps shortly before filing the instant suit. If the plaintiffs in the Elder suit had such knowledge and failed to take steps to enforce that Decree, such knowledge and failure could not be attributable to defendants and made the basis of a holding that by reason thereof said Decree should be interpreted as permitting the practices complained of by defendants in the case at bar.

■ Appellant's final assignment of error is that the trial court erred in denying plaintiff's motion to modify the Decree. It is then stated that the Decree was too vague and indefinite and might be construed to prohibit practices which are clearly permissible under the law and under the terms of the Elder Decree.

■ This assignment is too general to present anything for review. Furthermore, the assignment is not carried forward and developed in the argument. For that reason it must be deemed abandoned. Rafferty v. Levy et al., Mo.App., 153 S.W.2d 765.

We find no error in the record. The findings and judgment were proper under the pleadings and the evidence. The judgment appealed from is affirmed.

WOLFE, P. J., and RUDDY, J., concur.