Vada Victoria SCOTTON, Plaintiff-Appellant,

v.

Clinton Ralph SCOTTON, Defendant-Respondent.

No. 8117.

Springfield Court of Appeals.

Missouri.

Aug. 14, 1962.

William A. Moon, Springfield, for appel-lant.

No Appearance for respondent.

McDOWELL, Judge.

Plaintiff, Vada Victoria Scotton, appeals from a judgment of the Circuit Court of

Greene County dismissing her petition for divorce for lack of one year's residency in Greene County and the state of Missouri and lack of jurisdiction of the court.

The petition was filed October 18, 1961, against defendant, Clinton Ralph Scotton. It was in conventional form and supported by affidavit for divorce executed by plaintiff. It alleged the lawful marriage of the parties at Plymouth, Indiana, on August 20, 1945, and a final separation for alleged indignities specified and that plaintiff is now a resident of Greene County, Missouri, and that she has resided within the state for more than one whole year next before the filing of the petition; that defendant is a non-resident of the state of Missouri, and his present address is unknown. The prayer is for divorce and restoration of plaintiff's former name, Hall.

The defendant, although duly notified by publication, failed to appear within the time prescribed by law and default was by order of the court entered against defendant.

The cause was tried February 9, 1962, before the Honorable Douglas W. Greene, Judge of the Circuit Court of Greene County, Missouri, Division II. The court, after hearing all of the evidence, entered judgment dismissing plaintiff's petition for lack of one year's residency on the part of plaintiff and lack of jurisdiction of the court. Plaintiff appealed.

Plaintiff's evidence shows that she was married to the defendant on August 20, 1945, in Plymouth, Indiana, and separated April 9, 1956, in New Jersey. Her evidence fully supports the allegations of indignities in her petition as cause of the separation. She testified that she is now a resident of Greene County, Missouri, and has resided within the State for more than one year preceding the filing of her petition. She gave this testimony:

"Q. Where were you raised, Mrs. Scotton? A. Right here in Springfield.

"Q. Did you go to school here? A. Yes, sir.

"Q. How long did you live here in Springfield? A. Well, let's see—I was about seven years old when my mother and father came here, and I lived here until 1940.

"Q. In October of 1960, then, did you move back to Springfield, Missouri? A. Yes, sir.

"Q. And where did you establish your home at that time? A. I was with my sister.

"Q. What was that address? A. 1815 South Franklin.

"Q. And, at that time, did you move all of your belongings here? A. I moved everything I could put in the car.

"Q. Did you establish your home here at your sister's? A. I left my things—I had to go back on account of my daughter being sick.

"Q. Now, at the time you moved here in October of 1960, was it your intention to make this your permanent home and residence? A. Yes, sir.

"Q. Did you have any intention of returning back to New Jersey to live? A. No. I didn't.

"Q. What is your occupation, Mrs. Scotton? A. I am a nurse, a PN.

"Q. Were you connected with any particular hospital there in New Jersey? A. I worked part time at Allsoul Hospital, and then did private duty around town.

"Q. Did you terminate your relations there in the east before you came to Missouri? A. I did."

Witness testified that she gave the hospital two weeks notice that she was leaving; that she made arrangements through correspondence with her sister in Springfield to live in her home. She gave this evidence: "A. Well, I came around the first of October, and I left here around the eighth of November.

"Q. Now, what was your purpose of leaving at that time? A. My daughter was sick, and I went back to be with her.

"Q. What was the difficulty with your daughter? A. Well, she was expecting."

She testified that her daughter lived in Morristown, New Jersey; that at the time she moved to Springfield she had no intention of returning but that her daughter called her by phone and said she was very sick and that was when she went back. She gave this evidence:

"Q. Now, when you left, did you intend to leave here permanently, or just a temporary—? A. That was only temporarily.

"Q. And did you consider your sister's home your home while you were gone to New Jersey? A. Yes.

"Q. And how long, then, did you remain with your daughter? A. Well, I was there until October of this year. And then I came back.

"Q. And, what was your purpose in staying so long there in New Jersey? A. Well, we had an awful snowstorm and I couldn't get back. And then I got sick myself, and I had bursitis and I was in the hospital from the 28th—26th of April. * * * I also had pneumonia.

"Q. And then, when you got out of the hospital, how long was it before you were able to travel? A. Well, my doctor—it was in June, I was to get under the doctor's care—I was still taking shots. And the doctor didn't want me to leave then, and I said, 'Well I want to get back.' And he said, 'I would advise you not to start driving with your arms like they are; I would like for you to stay until we can get this straightened up.'"

She said she continued to stay in Morristown and did temporary work while there, nursing duty; that she helped part time on the floors when they needed her but she maintained her residence here in Springfield. She gave this evidence:

"Q. My question was, Mrs. Scotton, during the time that you were there in Morristown, New Jersey, did you maintain your home here at your sister's in Springfield? A. Yes, sir.

"Q. Were your personal belongings here? A. That's right.

"Q. And, did you consider this as your home? A. That's right.

"Q. Was it your intention, while you were in New Jersey, to return here to your home as soon as you were physically and financially able to do so? A. Yes, sir.

"Q. And did you return to your home here as soon as you were physically and financially able to do so? A. Yes, sir.

"Q. And when was that? A. That was in October.

"Q. The first part of October of 1961? A. Yes.

"Q. Have you employment here Mrs. Scotton? A. Yes. I am working at the Burge Hospital.

"Q. How long have you worked at Burge Hospital? A. Since the first day of November.

"Q. of '61? A. That's right.

"Q. What type of work are you doing there? A. I have charge of the central supplies of an evening.

"Q. And, have you transferred your nurse's license to Missouri, or made application to do so? A. Yes; I have."

"EXAMINATION BY THE COURT:

Q. When did you make your application to transfer your nurse's license to Missouri, Mrs. Scotton? A. In November.

"Q. Do you have a driver's license? A. Yes, I do.

"Q. What state is that issued from? A. From New Jersey."

She testified that she had never made application for a Missouri driver's license; that it was due this month and she will have it transferred to Missouri. She stated she was not driving her car at this time; that when she left New Jersey she went to the Post Office and had her mailing address changed in care of her sister; that was in October, 1961; that when she was here the first time she had not received any letters transferred from New Jersey; that she had not left a forwarding address at that time. She stated that when she went back she left wearing apparel at her sister's, most of her underclothes, except just what she had to have and her dresses she did not need; that she took her nurse's uniforms and cap. She gave this evidence:

"Q. Did you take other clothes back with you? A. I took just what necessary things I needed.

"Q. And left all your other clothes down here, did you? A. I left my things and clothes down here."

Her testimony was that she left Springfield on November 8th and her daughter's baby was born November 10th. She stated she had understood that her daughter's mother-in-law was going to take care of the baby but that her father-in-law had gotten sick and she could not go and that was her reason for going back, was to take care of the baby.

In answer to the court's question plaintiff testified that when she left New Jersey in October, 1960, she had a mobile trailer; that her daughter wanted it left there; that she intended to get it later on but when she went back she inquired and found it would cost her $500.00 to have it moved so she sold it in September, 1961. She said she did not live in the trailer after she went back to New Jersey but she did go out and straighten things up in it. She testified that all the time she was back she lived in the home of her daughter; that she stayed there from November 10, 1960, until October, 1961, when she came back to Missouri; that she went to work when she was back in New Jersey in December, 1960, and worked up until September or October, 1961, aside from the period she was hospitalized. She stated she was on private duty cases part time and in the hospital. She testified she had insurance with Allstate but had not had notice of premiums transferred yet. She stated that as soon as she could get everything settled she wanted to move to herself.

Plaintiff offered evidence of witnesses living in Springfield who had known her for some 30 or 40 years who testified to the good reputation of plaintiff for good conduct.

Mrs. Martha Pickett, a resident of Springfield and sister of plaintiff, testified that plaintiff had made arrangements to move into her home in October, 1960; that she had consented that plaintiff make her home with her. She stated that plaintiff was just going to live with her as a member of the family; that she had a room at her home and the rest of the house she shared with the family. She stated that plaintiff had moved her personal belongings into her home; that she was to live there until she wanted to move or maybe until she got a job. She stated that plaintiff was intending to make her home there indefinitely as far as she knew; that three weeks ago she moved to an apartment; that she was in her home approximately five weeks before she returned to New Jersey to take care of her daughter during confinement. She gave this evidence:

"Q. Now, did she leave her personal things there at your home, in her room? A. Yes. Part of her personal things remained in my home.

"Q. And did that room continue to be hers while she was gone? A. Yes, sir.

"Q. Did she tell you what her intentions were when she left your home to go to her daughter's? A. Well, she just said, 'I will be back as soon as I can return'."

Witness testified that she considered the room plaintiff's while she was gone; that plaintiff had written her and said she wasn't feeling well and she wrote back and told her if she wanted to live like poor people she could come down and live with her; that sometime in September plaintiff called her and said "I am coming down and live with you", and I said, "All right."

Howard L. Pickett, husband of Martha Pickett, testified that he lived at 1815 South Franklin; that in the first part of October, 1960, arrangements were made for plaintiff to come and live with them; that she did come and had a carload of personal things and she moved into a room at his home. He testified that as far as he knew it was her intention to remain there indefinitely. He corroborated his wife's testimony as to the cause of plaintiff going back to New Jersey to her daughter's.

Plaintiff assigns as error that the judgment of the trial court was totally unsupported by the evidence; that all the evidence establishes that appellant changed her domicile from the State of New Jersey to the State of Missouri the first of October, 1960, by her actual personal presence in Springfield, Greene County, Missouri, and moving into her sister's home with all her personal belongings, with the intention to remain there permanently or for an indefinite time without any fixed or certain purpose to return to New Jersey and thereby established a residence within this State and kept and maintained her legal residence in Springfield, Greene County, Missouri, from that date until the present time; that she at no time changed her residence thereafter from Greene County, Missouri, while absent therefrom temporarily from the State, working; and that such residence once established by appellant within this State and not thereafter changed is sufficient for the maintenance of her divorce action, notwithstanding the physical absence of the appellant resident for a short or long period.

■ On appeal it is our duty to consider, weigh and evaluate all of the competent evidence tending to prove or refute the essential factual issues and reach our own findings. In so doing reviewing court is not bound by the trial court's findings but usually accords proper deference to them, particularly where the credibility of witnesses is challenged. Reviewing court will not hesitate to correct any errors the trial court may have made. May v. May, Mo. App., 294 S.W.2d 627, 632; Phelps v. Phelps, 241 Mo.App. 1202, 246 S.W.2d 838; Section 510.310, subd. 4, RSMo 1959, V.A. M.S.; Grant v. Grant, Mo.App., 324 S.W. 2d 382, 386.

■ The question of whether plaintiff met necessary residential requirements is one of fact to be determined in the first instance in the trial court. May v. May, supra, 294 S.W.2d p. 634 [4–7]; Grant v. Grant, supra, 324 S.W.2d p. 386 [2]; Finley v. Finley, Mo.App., 6 S.W.2d 1006.

Section 452.050 RSMo 1959, V.A.M.S. provides: "No person shall be entitled to a divorce from the bonds of matrimony who has not resided within the state one whole year next before the filing of the petition, unless the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state; * * *."

It can be seen that the statute uses "resided" and not "domiciled". Nowhere in the statute is "resided" defined. In Phelps v. Phelps, supra, and in State ex rel., Stoffey v. La Driere, Mo.App., 273 S.W.2d 776, the courts found that "resided" as used in the statutes means the same as "domiciled". In the Phelps case, the Kansas City Court of Appeals stated on page 844 of the opinion in 246 S.W.2d.

■ "The word 'residence' is often but not always used in the sense of 'domicil' and its meaning in a legal phrase must be determined in each case. The courts of this state have held that the 'residence' required by our divorce statutes is equivalent to 'domicil'". (See M.L.R., Vol. 24, 1959, p. 218

for a full discussion of domicile for divorce in Missouri.)

■ A person must have a domicile somewhere and a person who has obtained majority and is not under some legal disability may, through exercise of choice in matter, change his domicile and thereby acquire what is known as "domicile of choice". Phelps v. Phelps, supra, 246 S.W.2d page 843 [5–8].

In Phelps v. Phelps, supra, 246 S.W.2d page 844, the court stated:

"* * * According to the Missouri cases, actual personal presence in the new place and the intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode, will constitute a change of domicil. The fact of physical presence and the intention must concur; and if they do so, even for a moment, the change of domicil takes place. Nolker v. Nolker, Mo., 257 S.W. 798; Barth v. Barth, Mo.App., 189 S.W.2d 451; Lewis v. Lewis, 238 Mo.App. 173, 176 S.W.2d 556; * * * In Hays v. Hays, 221 Mo.App. 516, 518, 282 S.W. 57, 58, the court said: 'To create a domicile or residence, two elements are essential; Actual bodily presence in the place combined with a freely exercised intention to remain there permanently, or at least for an indefinite time.' It will be noticed that the word 'residence' is used as the equivalent of 'domicil.'" See State ex rel. Stoffey v. La Driere, supra, 273 S.W.2d page 781 [12].

■ The one year period of residence in the State prescribed by § 452.050 with necessary residential requirements in a divorce action is jurisdictional. Grant v. Grant, Mo.App., 324 S.W.2d 382; State ex rel. Stoffey v. La Driere, supra. Residents within the State for a year next preceding the institution of the divorce suit is a jurisdictional fact which must be averred and proved. Gomez v. Gomez, Mo.Sup., 336 S.W.2d 656.

The plaintiff has the burden of proving that she has a domicile within the State and that she has complied with the statute prescribing the preliminary period of residence. Gomez v. Gomez, supra.

■ Mere temporary absence from the State without any intention of remaining away does not cause a person to lose his or her residence within the meaning of the divorce law. Phelps v. Phelps, supra.

In determining the existence of residence the length of period of bodily presence, however short, is of no consequence, providing the concurring intent to remain is established by other evidence, otherwise it may become an important fact for consideration in determining the existence of intention. Barth v. Barth, Mo.App., 189 S.W.2d 451.

In Trigg v. Trigg, 226 Mo.App., 284, 41 S.W.2d 583, 589 [4–6], the court stated: "It is obvious that this language was meant to apply to the facts and circumstances in the case then under consideration, and it is equally obvious that it is directed solely to the elements necessary to *create* a residence. It has no reference whatever to the elements necessary to *maintain* said residence. The case is not an authority for the proposition that there must be a continuous physical presence for one whole year before suit. To give such interpretation to the statute would be unreasonable and oppressive. We hold in accord with the general expression of the law that residence is largely a matter of intention evidenced by some act or acts in conformity with such intention, and that a residence once established within this state and not thereafter changed is sufficient for the maintenance of a divorce action, notwithstanding the physical absence of the resident for a short or long period. * * *"

This court held in Grant v. Grant, supra, 324 S.W.2d page 387 [6] that:

"'Residence' is acquired by an intention to live in a place permanently or for an indefinite time, coupled with actual

bodily presence, though the presence need not be continuous." (Citing Madsen v. Madsen, Mo.App., 193 S.W.2d 507 and Trigg v. Trigg, 226 Mo.App., 284, 41 S.W. 2d 583, 589 [4–6], and we quoted from Phelps v. Phelps, supra, 246 S.W.2d 845 [11–12] "that continuous residence does not require continuous presence, but is compatible with temporary absences. Mere temporary absence from the state, without any intention of remaining away, does not cause a person to lose his (or her) residence within the meaning of the divorce laws."

■ Under the particular facts and circumstances in the instant case we believe that the trial court was in error in reaching the conclusion that plaintiff was not a resident of Greene County and of the State of Missouri for one whole year next before the filing of her petition. Her absence temporarily from the State did not constitute a change of residence where she did not intend to relinquish her domicile in Missouri. Actual personal presence in a new place and intention to remain there, either permanently or for an indefinite time without any fixed or certain purpose of returning to former place of abode constitutes a change of domicile.

■ The evidence in the instant case shows that plaintiff accompanied her parents to Springfield, Missouri, at the age of seven years and that she lived in Springfield until 1940; that her sister has lived here continuously. Plaintiff testified that she has been separated from her husband since 1956 and has no knowledge of his whereabouts; that she made arrangements with her sister in Springfield to change her domicile from New Jersey to Springfield and that she actually came to Springfield and brought all of her personal belongings and lived with her sister for some five weeks. Because of the sickness of her daughter, who wired her to come back to take care of her during childbirth and because her daughter's mother-in-law had been unable to take care of plaintiff's daughter, she took such part of her clothing, including her nurse's uniforms and cap, and went back to stay with her daughter. We think that it is proper to infer that plaintiff had been living in a trailer, which, at the request of her daughter, she had left in New Jersey, but the evidence is that plaintiff never went back to live in the trailer but stayed in her daughter's home. Because of weather conditions and because of plaintiff's own illness, she remained practically a year but plaintiff testified that she, at no time, ever intended to live in New Jersey but always intended to come back to Missouri and Springfield. The evidence is that she did come back to the home of her sister in October, 1961; that she had left much of her personal possessions in the room that her sister had provided for her and this divorce proceeding was filed later in October, 1961, after plaintiff's return to Springfield.

There are two elements necessary to create a domicile or residence—the actual bodily presence in the county combined with a freely exercised intention of remaining here permanently or for an indefinite time at least. When these two elements are present the change of domicile is completed. It seems to have been the opinion of the trial court that because plaintiff was recalled to New Jersey to be with her daughter at childbirth and because she stayed from November, 1960, until October, 1961, and worked some in the hospital and private homes as a nurse, that that proof, alone, showed she did not change her domicile. The cases hold that change of domicile is a matter of intention which can be determined only from the facts. They, likewise, hold that one does not lose his domicile when once changed by being absent from the county, either for a short or a long time; that if it is their intention to maintain their home at the place of the new domicile the fact of absence does not change their domicile. It was held in Trigg v. Trigg, supra, page 589, that the question of domicile is directed solely to the elements necessary to *create* a residence. It has no reference

whatever to the elements necessary to *maintain* said residence; that residence is largely a matter of intention evidenced by some act or acts in conformity with such intention, and that a residence once established within the state and not thereafter changed is sufficient for the maintenance of a divorce action, notwithstanding the physical absence of the resident for a short or long period. Bearing upon the intention of plaintiff to return to Missouri after she had established her domicile here, the evidence showed that she lived with her sister for some time and now has rented her own apartment; that she secured a job at Burge Hospital and had her nurse's license changed from New Jersey to Missouri. We think this evidence supports plaintiff's testimony and her sister's testimony that it was plaintiff's intention to change her domicile back to Springfield.

Judgment of the trial court is reversed and remanded with directions that a decree of divorce be entered for plaintiff as prayed for in the petition.

RUARK, P. J., concurs.

STONE, J., dissents.