Margaret CROWLEY (Plaintiff) Appellant,

v.

Edward CROWLEY (Defendant) Respondent.

No. 31088.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

294

Hale W. Brown, Kirkwood, for appellant.

Charles J. Malloy, St. Louis, for respondent.

JAMES D. CLEMENS, Special Judge.

Action for divorce. The trial court granted the defendant husband a divorce on his cross-bill and awarded him custody of the parties' minor children. Plaintiff wife appeals. The questions put to us here concern the trial court's alteration of its judgment, the admissibility of evidence, and whether the judgment was for the right party.

The parties were married in 1946 and separated in 1958, when plaintiff left the parties' home and took with her their four children, a boy now 17, and girls now 13, 10 and 6.

Plaintiff's evidence as to the merits was brief: She performed all her wifely duties and was affectionate to the best of her ability. Defendant often told her he wished he'd married a girl he'd previously been engaged to. He struck her many times, and just before the separation hit her on the jaw with his fist, knocking her down. Many times the defendant told her he didn't love her and wished he was rid of her. Defendant often went out alone but rarely took her out socially. Plaintiff lives in a modern four-room rented house with the four children. She works afternoons and the children are either with her or her sister.

Defendant's testimony: In 1958 the plaintiff became cold, called defendant vile names, and slapped him numerous times. Plaintiff ceased doing her usual household

work, refused to go with him to places of amusement, and ceased going to church with defendant and their children. Late in 1958, plaintiff left defendant, without notice or explanation. She took the children with her, and kept them in a single room, without toilet facilities, at a trailer court. She declined defendant's requests to return home with the children. She ceased taking the children to church, but for a while had a neighbor take them. Earlier that year, a pre-marital acquaintance of the parties, John Niznik, had begun associating with plaintiff from time to time. Niznik was married and had three children of his own. He gave her gifts of jewelry and perfume. He had written her endearing letters expressing his love for her in intimate details. She kept these letters secretly from the defendant. Plaintiff acknowledged to defendant her love for Niznik, and once wrote a note to her husband: "I can't understand why you suddenly seem shocked. I told you six months ago how I feel about Johnny, and that I wish I had married him. I have a responsibility to these children—so do you. I can't just consider my own feelings. I might never see Johnny again, but I will always feel the same about him. Talking to a priest isn't going to change anything." Once plaintiff and defendant called on Niznik together to induce him to cease interfering with their married life. Plaintiff made numerous telephone calls to Niznik at his place of employment. He acknowledged he was fond of her. Three of plaintiff's four character witnesses had met Niznik in the cocktail lounge where plaintiff worked as a waitress after the separation. Defendant has maintained close association with the children, being with them several times a week. Plaintiff sometimes left the children at her new home unattended, and at times had them with her at the cocktail lounge where she was employed. Defendant still maintains the family eight-room home and would have his mother's help in caring for the children while he is at work. Plaintiff denied that her interest in Niznik was romantic, and minimized the extent of their association and communication.

Plaintiff argues here that the decree is void. The trial court first denied both the petition and cross-bill. Then, within thirty days, it set aside that order and entered its decree in favor of the defendant, stating that counsel had not been notified of either the original order or the court's intention to alter it. Plaintiff did not raise the point here urged in her motion for new trial as required of her by Mo. Sup.Ct. Rule 83.13(a), V.A.M.R. in order to preserve the point for review. Adams v. Richardson, Mo., 337 S.W.2d 911(1); Marlo Coil Corp. v. Grand Park Corp., Mo.App., 348 S.W.2d 610(2, 3). Further, plaintiff does not set forth such an assignment here in her Points Relied On. She cannot preserve it merely by bringing it up in the argument portion of her brief. Automobile Club of Mo. v. Hoffmeister, Mo.App., 338 S.W.2d 348(6). Because the point is not properly preserved for review, and does not go to the merits of the cause, we will not consider it further.

Plaintiff next urges that the trial court erred in receiving in evidence the letters written to her by Niznik, on the ground that no proper foundation was laid therefor. She argues here, without citing authority, that the statements of Niznik in these letters were not binding on plaintiff. We take it that plaintiff means that what Niznik may have said in the letters was not relevant to the issues before the court, and was therefore inadmissible. One of those issues was whether plaintiff had associated with Niznik in a manner repugnant to her marital obligations. In the letters Niznik expressed his ardent affection for plaintiff and spoke of such conduct and attitude on her part as would indicate that the affection was mutual. We must examine the question of relevancy between the letters and the issue of wrong-doing.

Relevancy is the relationship between the offered fact and the fact in issue

to such a degree that the existence of the offered fact logically renders probable the existence of the fact in issue. See 31 C.J. S. Evidence § 158, and the case of Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780(1), loc. cit. 783, in which this court adopted Sec. 587 of Jones Commentaries on Evidence, where it is said:

"Applied to testimony, the meaning of the word 'relevant' is that the particular testimony directly touches upon the issue which the parties have made by their pleadings, so as to assist in getting at the truth of it. * * * It is not necessary, however, that the particular evidence should, in itself, bear directly upon the point in issue, for, though it is but a link in the chain of evidence tending to prove the issue by reasonable inference, it may nevertheless be relevant. * * * 'If the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury. The question as to its admission or rejection addresses itself to the court as one to be answered with a view to practical, rather than theoretical considerations. One fact is relevant to another fact whenever, according to the common course of events, the existence of one, taken alone or in connection with other facts, renders the existence of the other certain or more probable.'"

■ Standing alone, the letters do not show misconduct by plaintiff, and their existence would not be relevant. But, they do not stand alone. There was other evidence of intensive, clandestine association between plaintiff and Niznik. Each had otherwise acknowledged an affectionate attachment for the other. Although plaintiff denied receiving the letters, defendant testified he found them among her personal effects, along with gifts from Niznik, kept secretly by her. Considering these surrounding circumstances, we feel that the possession of these love letters by plaintiff was a fact which tended to render probable the alleged wrongful association between plaintiff and Niznik. The test is succinctly stated in Luechtefeld v. Marglous, Mo.App., 151 S.W.2d 710(5), loc. cit. 714: "Evidence is relevant if the fact it tends to establish in turn tends to prove or disprove a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue." We find that the letters were relevant to the issue at bar, and that their admission into evidence was not error. Compare Simpson v. Terminal Railroad Ass'n of St. Louis, Mo., 357 S.W.2d 65(1).

■ Plaintiff also claims error in the admission of evidence by defendant as to twenty some telephone calls plaintiff made to Niznik during June of 1958. Niznik testified he "could not dispute" receiving these calls from plaintiff. Plaintiff acknowledged "several" such calls to Niznik at his place of employment. Defendant testified that when he got his telephone bill for June he called the telephone office and got a list of the dates, numbers called and length of time of each call. He had learned that the numbers called were those of Niznik's employers. Defendant then read the results of his investigation, and plaintiff moved that this be stricken because it was not the best evidence. The trial court stated that this was not the best evidence, but failed to grant the motion, saying it was receiving the testimony "only as to the credibility of the plaintiff, not as to the truth of what was said." This ruling seemed to satisfy plaintiff's counsel, who replied: "We are on the same frequency then." Regardless of the correctness of the ruling and whether plaintiff preserved her claim of error, the number of calls is so inconsequential that we can and will rule the case without reference to this testimony. An error in admission of evidence is harmless in cases tried to a court, where there is sufficient proper evidence on which to base a decision. See Lockhart v. Lockhart, Mo. App., 271 S.W.2d 208(7); and cases at 3 Mo.Dig., Appeal and Error, ☞1054(1).

We pass now to the more essential issues of the case, the trial court's granting of the divorce to the defendant, and awarding to him the custody of the children. In passing on these issues we must ourselves decide them on the record of the case below, but in doing so we will consider the better vantage point of the trial court to assess the credibility of the witness and to observe the intangible factors which do not make themselves so apparent to us in the cold, written record. The findings of the trial court should be deferred to unless they are in such conflict with a clear preponderance of the evidence as to disclose a manifest abuse of judicial discretion. Sec. 510.-310(4), RSMo 1949, V.A.M.S.; LeClaire v. LeClaire, Mo.App., 352 S.W.2d 379(3); Grant v. Grant, Mo.App., 324 S.W.2d 382 (1).

Viewed in this light, we believe the evidence outlined above shows that defendant was the innocent and injured party, and that by the plaintiff's course of conduct she has committed such indignities as to be subversive of the family relationship and thus render defendant's condition intolerable. This is sufficient to entitle defendant to a divorce. Sec. 452.010 RSMo 1949, V.A.M.S.; Mayor v. Mayor, Mo.App., 351 S.W.2d 810(3); Moore v. Moore, Mo.App., 337 S.W.2d 781(8).

We come now to the more sombre question of the children's custody. The decision below was not in accord with the oft-quoted principle that the custody of children of tender years, particularly girls, should ordinarily be awarded to their mother. Thomas v. Thomas, Mo.App., 288 S.W.2d 689(9); Cadenhead v. Cadenhead, Mo.App., 265 S.W.2d 426(8). That principle pre-supposes that such custody will best serve the needs of the children, and where it does not, the father may properly be granted their custody. Tootle v. Tootle, Mo.App., 329 S.W.2d 218(6); Ragan v. Ragan, Mo.App., 315 S.W.2d 142(2). This is true even where the mother is a "fit and proper person to raise the child." Ballew v.

Ballew, Mo.App., 288 S.W.2d 24(6, 7). We have considered the evidence as it reflects on the welfare of the children. We have compared the concern of each parent for the children, and their respective abilities to rear the children so as to furnish them with moral and religious training, education and a well-ordered home. We believe that the trial court's decision to grant custody of the children to the defendant is amply warranted by the evidence, was proper, and should not be disturbed. Ragan v. Ragan, Mo. App., 315 S.W.2d 142(2); Clark v. Clark, Mo.App., 306 S.W.2d 641(7); I. ——— v. B. ———, Mo.App., 305 S.W.2d 713(8).

We believe the judgment was for the proper party and should be affirmed. It is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.